UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

------------------------------------------------------x
                                      :
JOHN J. WEBER                     :
                                      :          3:10 CV 401 (JBA)
                                      :
v.                                      :
                                      :
FUJIFILM  MEDICAL SYSTEMS, U.S.A.,   :          JULY 19, 2010
ET AL.                                   :
------------------------------------------------------x

### RULING ON PLAINTIFF'S MOTION FOR COURT APPROVAL OF COUNSEL'S CONTACT WITH FORMER EMPLOYEES OF DEFENDANTS AND ON DEFENDANTS' CROSS-MOTION FOR PROTECTIVE ORDER IN RELATION TO PLAINTIFF'S REQUEST TO CONDUCT EX PARTE INTERVIEWS OF FORMER EMPLOYEES

The factual and procedural history behind this already heavily litigated lawsuit is set forth in this Magistrate Judge's Ruling on Plaintiff's Motion to Compel Production of Documents Claimed by Defendants to be Privileged, filed July 15, 2010 (Dkt. #98)["July 15th Ruling"].  On June 3, 2010, plaintiff filed his Motion for Court Approval of Counsel's Contact with Former Employees of Defendants and brief in support (Dkts. ##63-64),[1] as to which defendants filed their Cross-motion for Protective Order in Relation to Plaintiff's Request to Conduct Ex Parte Interviews of Former Employees and brief in support of their own motion and in opposition to plaintiff's motion (Dkts. ##73, 76).   On July 2, 2010, plaintiff filed his brief in reply to his own motion and in opposition to defendants' motion.  (Dkts. ##85, 90).

As set forth in plaintiff's brief, on May 11, 2010, plaintiff's counsel asked defense counsel to identify the current employment status of individuals listed on defendants' initial disclosure list, as plaintiff's counsel wanted "to speak directly with any former employees who are potential witnesses without the intervention" of defendants or their attorneys.  (Dkt. #64,

---

[1] Attached is a copy of case law and copies of four letters between counsel, dated May 11, 21, 24, and 28, 2010 (Exhs. A-D).

at 1-2 & Exh. A). Defense counsel responded ten days later, on May 21, 2010, identifying thirteen people who are current employees of FMSU or HLUS, six individuals who are consultants for one of these companies, and twelve individuals who are former or retired employees of them. (Id. at 2 & Exh. B). Defense counsel advised that at least ten of the former or retired employee were subject to non-disclosure and/or confidentiality obligations, so that "[a]ny direct contact with these individuals, or efforts to solicit confidential and proprietary information obtained as a result of their relationship with the respective entity, may result in a potential breach of their obligations with the respective entity." (Id.). Three days later, on May 24, 2010, plaintiff's counsel sent a letter assuring defense counsel that for these ten employees that she would "be sure to steer clear of . . . issues" governed by the confidentiality agreements. (Id. at 2 & Exh. C). Four days later, on May 28, 2010, defense counsel responded that plaintiff's counsel had "misunderstood" his May 21st letter, in that he objected to her contacting any of the twelve individuals, in violation of their confidentiality agreements or Rule 4.2 of the Connecticut Rules of Professional Conduct. (Id. at 2-3 & Exh. D).

In plaintiff's brief, his counsel represents that she will fully comply with the requirements set forth in Dubois v. Gradco Sys., Inc., 136 F.R.D. 341 (D. Conn. 1991)(Cabranes, J.) and in United States v. Hous. Auth. of Town of Milford, 179 F.R.D. 69 (D. Conn. 1997)(Fitzsimmons, M.J.)["Milford Hous. Auth."]. (Dkt. #64, at 3-6). In their brief, defendants assert that they do not "seek[] to cut-off ex parte interviews of any former employees for the sake of obstructing the discovery process," but rather emphasize that all twelve former or retired employees entered into confidentiality agreements with their employers. (Dkt. #76, at 2-5). Furthermore, defendants argue that four of these former

employees (Charles Leslie, former President of FMSU; Joe Covery, former Vice President of Human Resources for HLUS; Stan Freirmuth, former Senior Vice President and Chief Administrative Officer of HLUS; and Larry Hart, former Director of Human Resources of FMSU) were former "high level employees" privy to privileged and proprietary information and have the ability to bind the company.  (Id. at 5-7, citing Peralta v. Cendant Corp., 190 F.R.D. 38, 41 (D. Conn. 1999) and Rivera v. Rowland, No. CV-95-545629, 1996 WL 753941 (Conn. Super. Ct. Dec. 17, 1996)).  As a result, defendants seek a protective order that plaintiff's counsel may not interview defendants' former employees absent notice to defendants, and that if defendants wish, they may be present for such interviews.[2]

In an exhaustive decision on this issue, then District Judge José A. Cabranes held, in a case of first impression, that an attorney representing a client against a corporate party may conduct ex parte interviews of former employees of the corporation, which is represented by another attorney, without the consent of the corporation's lawyer, and not run afoul of Rule 4.2 of the Connecticut Rules of Professional Conduct.  Dubois, 136 F.R.D. at 342-46.  Judge Cabranes quoted from "the leading commentators in this field[,]" who observed that "some former employees continue to personify the organization even after they have terminated their employment relationship[,]" such as "a managerial level employee involved in the underlying transaction, who is also conferring with the organization's lawyer in marshal[]ing the evidence on its behalf."  Id. at 346, quoting G. Hazard & W. Hodes, THE LAW OF LAWYERING: A HANDBOOK ON THE MODEL RULES OF PROFESSIONAL CONDUCT 436-436.1 (1988 Supp.)(emphasis in original).  For "[t]his kind of employee [who] is undoubtedly privy to privileged information, . . . an opposing lawyer is not entitled to reap a harvest of such

---

[2]Plaintiff objects to this request in that defense counsel did not comply with Local Rule 26(c) in seeking a protective order.  (Dkt. #85, at 1-2).

information without a valid waiver by the organization." Id.

Judge Cabranes, however, issued "[s]everal caveats" in his ruling, including that a protective order might be appropriate if "the former . . . employees possess–by virtue of their involvement in the underlying matters–information that might be protected under the attorney-client privilege. . . ." Id. at 346. Judge Cabranes continued:

> [I]t goes without saying that, with respect to any unrepresented former employee, plaintiff's counsel must take care not to seek to induce or listen to disclosures by the former employees of any privileged attorney-client communications to which the employee was privy. After all, the privilege does not belong to, and is not for the benefit of, the former employee; rather, it belongs to, and is for the benefit of [defendant corporation]. Thus, efforts by plaintiff's counsel to induce or listen to privileged communications may violate Rule 4.4 of the Model Rules of Professional Conduct, which requires respect for the rights of third persons.

Id. at 347 (footnote & citations omitted).  Judge Cabranes added the further requirement that plaintiff's lawyer "make clear to the former . . . employees the nature of the lawyer's role in this case, including the identity of plaintiff and the fact that [defendant corporation] is an adverse party."  Id.  Lastly, Judge Cabranes set forth the consequences of any improper conduct by plaintiff's counsel – if defendants were "able to point to specific instances of ethical violations or questionable ethical behavior by plaintiff's counsel with regard to the ex parte interviews of former . . . employees, the court could order the discontinuation of such interviews." Id. (citation omitted).  Other sanctions could lead to the imposition of a protective order and the barring of any related testimony at trial.  Id.

The Dubois decision was discussed extensively by U.S. Magistrate Judge Holly B. Fitzsimmons seven years later in the Milford Hous. Auth. decision.  Judge Fitzsimmons permitted plaintiff's counsel to interview defendant's former employee, in the absence of proof that the former employee had become a trial consultant for defendant and had

engaged in privileged communications. 179 F.R.D. at 72-74. Judge Fitzsimmons cautioned, however, that plaintiff's counsel was required to "make[] it clear at the outset of the ex parte interview that privileged communications are not to be divulged," and defendants were "free to educate [the former employee] on the details of which prior communications are privileged. . . ." Id. at 75.

The parameters of the Dubois decision was addressed ten years ago in Shoreline Computers, Inc. v. Warnaco, Inc., No. CV 990422853S, 2000 WL 371206 (Conn. Super. Ct. Apr. 3, 2000), where plaintiff's counsel wanted to conduct ex parte interviews with eleven former employees of the defendant corporation. Id. at *1. Relying upon Dubois and Milford Hous. Auth., Connecticut Superior Court Judge Jon Alander observed the "recognized limits" to such contacts, in that

> [f]ormer employees acting as trial consultants or otherwise actively and extensively working with the corporation's attorney in marshaling evidence and preparing for litigation may be off limits to ex parte contact by an attorney for an adverse party . . . because of the individual's extensive exposure to privileged communications and sustained access to the party's litigation strategy and the attorney's work product . . . .

Id. at *2.

Defendant argued that five of the former employees had met with the corporation's attorneys to disclose their knowledge of the underlying facts, thus "expos[ing] [them] to the corporation's litigation strategy[,]" including "confidential" discussions that "addressed the strengths and weaknesses of the claims of both parties to the litigation." Id.. One of the former witnesses had a three hour meeting, followed by another two to three hour meeting, followed by "a number of" telephone discussions. Id. Judge Alander held that "[n]one of the conversations or relationships . . . with the five former employees transform any of them into anything resembling a trial consultant[,]" because "[a] few meetings and telephone

conversations for a former employee falls far short of the extensive contact with counsel, substantial disclosure of attorney work product and ongoing access to litigation materials and strategy that signify a trial consultant." Id. (citation omitted).  Plaintiff's counsel, however, was ordered to "disclos[e] to the former employees that counsel represents the plaintiff in litigation that is presently pending against [the corporate defendant]" and was further "ordered not to induce, listen to, or receive any privileged communications that occurred between any of the eleven former employees and attorneys for [the corporate defendant]." Id. at *3.

From these three key decisions, it is clear that four of the twelve former employees are "off limits" to ex parte interviews by plaintiff's counsel here – Charles Leslie, former President of FMSU; Joe Covery, former Vice President of Human Resources for HLUS; Stan Freirmuth, former Senior Vice President and Chief Administrative Officer of HLUS; and Larry Hart, former Director of Human Resources of FMSU.  See Shoreline Computers, 2000 WL 371206, at *2.  As to the other eight employees, defendants have not demonstrated that they have had "extensive exposure to privileged communications and sustained access to the party's litigation strategy and the attorney's work product."  Id.  If the lengthy interviews in Shoreline Computers were not sufficient to insulate former employees from ex parte interviews by opposing counsel, then the mere signing of confidentiality agreements here does not either.  However, consistent with the requirements placed upon counsel in Dubois, Milford Hous. Auth., and Shoreline Computers, and particularly given the apparent strong distrust between counsel in this lawsuit,[3] the following conditions are imposed before the ex parte interviews of the other eight former employees can be held, during the interviews, and

---

[3] See July 15th Ruling at 1, n.1 & at 5, n.7.

6

after the interviews:

(1) Plaintiff's counsel shall notify any or all of the eight remaining former employees, <u>in writing</u>, of the nature of her role in this lawsuit, including the identity of plaintiff and the fact that their former employers are adverse parties;

(2) Within twenty-four hours of sending any letter(s) pursuant to ¶ 1 <u>supra</u>, plaintiff's counsel will notify defense counsel, <u>in writing</u>, of the fact that she has sent such letter(s);

(3) Defendants are free to educate their former employees on the details of which prior communications are privileged, including any discussions that are barred by the confidentiality agreements into which they have entered;

(4) Plaintiff's counsel shall not make any efforts to induce or listen to any privileged communications;

(5) If defendants are able to point to specific instances of ethical violations or questionable ethical behavior by plaintiff's counsel with regard to the <u>ex parte</u> interviews of their former employees, they may file a motion to discontinue such interviews; and

(6) If any <u>ex parte</u> statements made by former employees impute liability to defendants, defendants may move at trial, or in motions <u>in limine</u>, to preclude the admission of such statements.

Accordingly, for the reasons stated above, plaintiff's Motion for Court Approval of Counsel's Contact with Former Employees of Defendants and brief in support (Dkt. #63) and defendants' Cross-motion for Protective Order in Relation to Plaintiff's Request to Conduct <u>Ex Parte</u> Interviews of Former Employees (Dkt. #76) are both <u>granted in part and denied in part to the extent set forth above</u>.[4]

---

[4] As is abundantly clear from the July 15th Ruling and from this Ruling, counsel <u>must</u> find a way to improve their communication skills, and not burden the Court will <u>every</u> detail of discovery

This is not a Recommended Ruling but a Ruling on discovery, the standard of review of which is specified in 28 U.S.C. § 636; FED. R. CIV. P. 6(a), 6(e) & 72; and Rule 72.2 of the Local Rules for United States Magistrate Judges.  As such, it is an order of the Court unless reversed or modified by the District Judge upon timely made objection.

See 28 U.S.C. § 636(b)**(written objections to ruling must be filed within fourteen calendar days after service of same);**  FED. R. CIV. P. 6(a), 6(e) & 72; Rule 72.2 of the Local Rules for United States Magistrate Judges, United States District Court for the District of Connecticut; Small v. Secretary, H&HS, 892 F.2d. 15, 16 (2d Cir. 1989)**(failure to file timely objection to Magistrate Judge's recommended ruling may preclude further appeal to Second Circuit).**

Dated at New Haven, Connecticut, this 19th day of July, 2010.

  /s/ Joan G. Margolis, USMJ  
Joan Glazer Margolis  
United States Magistrate Judge

---

in this single plaintiff case.