UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| John J. Weber,<br>  *Plaintiff*,<br><br>  v.<br><br>FUJIFILM Medical Systems U.S.A., Inc., Hiroaki Tada, FUJIFILM Holdings America Corporation, FUJIFILM Holdings Corporation, and FUJIFILM Corporation,<br>  *Defendants.* | Civil No. 3:10cv401 (JBA)<br><br><br><br>January 21, 2011 |

RULING ON DEFENDANTS' MOTIONS FOR PROTECTIVE ORDER
PROHIBITING THE DEPOSITIONS OF KAZUO NAKAMURA AND
SHIGETAKI KOMORI

Plaintiff John Weber has noticed the depositions of Kazuo Nakamura, General Manager of FujiFilm Corporation's Medical Systems Business Division, and Shigetaki Komori, FujiFilm Corporation's President and Chief Executive Officer. Defendants now move [Doc. ## 172, 173] pursuant to Federal Rule of Civil Procedure 26(c) for a Protective Order prohibiting the Nakamura and Komori depositions. For the reasons stated below, the Court will deny Defendants' motions for protective order.

I. Background

On October 15, 2010, Plaintiff, through his counsel, sent notice to counsel for Defendants of his intent to take the deposition of Nakamura on November 18, 2010 and the deposition of Komori on November 21, 2010, and requested that Nakamura and Komori produce any documents they had in their possession, custody, or control that relate to Weber's employment or the decision to terminate Weber's employment. (Nakamura Notice of Dep., Ex. A to Tuttle Certification in Supp. of Nakamura Mot. [Doc. # 172–2]; Komori

Notice of Dep., Ex. A to Tuttle Certification in Supp. of Komori Mot. [Doc. # 173–2].) Defendants object to these depositions on the grounds that Plaintiff cannot depose "top level executives" without showing that Nakamura and Komori have "special or unique knowledge regarding his claims" and that Nakamura and Komori do not have any of the requested documents and were not involved in the decision to terminate Weber. (Mem. Supp. Nakamura Mot. [Doc. # 172-1] at 4; Mem. Supp. Komori Mot. [Doc. # 173-1] at 4.)

Nakamura is the General Manager of the Medical Systems Business Division of FujiFilm Corporation, the highest ranking executive officer position within that division. (Nakamura Certification [Doc. # 174] ¶¶ 2, 15.) Although Nakamura is "informed about business decisions that may impact the Medical Systems Business Division of FujiFilm group companies," he represents that he is not directly involved in the day–to–day operations of subsidiaries such as FujiFilm Medical Systems U.S.A., Inc. ("FMSU"). (*Id.* ¶ 7.) Nakamura also avers that he has no documents responsive to Weber's request, that Weber never reported to him, and that it was not his decision to terminate Weber. (*Id.* ¶¶ 9, 12–13.) He claims that because of his high–ranking position and responsibilities, "submitting to a deposition in a case with which I have had no personal involvement and about which I have no firsthand knowledge will impose a tremendous burden on me and on FujiFilm Corporation." (*Id.* ¶ 16.)

Komori is the President and Chief Executive Officer of FujiFilm Corporation. (Komori Certification [Doc. # 175] ¶ 2.) He is responsible for "corporate–wide strategic policy planning and decisions" and claims to have "no direct involvement in the day–to–day operations of the subsidiaries" including FMSU. (*Id.* ¶ 7.) Komori avers that Weber never reported directly to him, nor did the President of FMSU, Hiroaki Tada. (*Id.* ¶¶ 9–10.)

According to Komori, he has no documents responsive to Weber's requests, it was not his decision to terminate Weber, and submitting to a deposition "will impose a tremendous burden." (*Id.* ¶¶ 12, 13, 16.)

Plaintiff claims that, contrary to Defendants' representations, Nakamura and Komori have "unique information . . . regarding the plan by FujiFilm Corporation to terminate Mr. Weber's employment." (Pl.'s Mem. in Opp'n to Defs.' Mot. to Preclude Nakamura Dep. [Doc. # 178] at 2; Pl.'s Mem. in Opp'n to Defs.' Mot. to Preclude Komori Dep. [Doc. # 179] at 2.) In support of his position, Plaintiff points to the April 29, 2010 deposition testimony of Hiroaki Tada during which Tada discussed a Japanese–language document written by Nakamura that discusses plans to terminate Weber's employment in response to questions asked by Komori.[1] (Nakamura Opp'n at 3; Tada Dep., Ex. C to Nakamura Opp'n at 194:12–195:15.) Tada testified that in this document, Nakamura states that "the top American is a cancer to the company" and that "it has taken time for us to be able to reduce [Weber's] work, but right now we are moving towards having him quit the company by the end of the fiscal year, which would be by May of 2010." (Tada Dep. at 195:21–196:13.) According to Tada, Nakamura also wrote: "Make sure that we have preparation, if after Mr. Weber is gone there is a possibility of a lawsuit, and therefore, make sure that we have preparation for that." (*Id.* at 198:4–17.)

---

[1] Although Plaintiff claims that Nakamura wrote this document to Komori, Tada only testified that Nakamura wrote the document in response to questions posed by the "the president of Fuji Japan," and does not testify that Komori is the "president" that posed the questions answered in the document. (Tada Dep. at 194:12–195:10.) Komori is the president of FujiFilm Corporation. It is unclear to which corporate entity "Fuji Japan" refers. Defendants acknowledge that Nakamura sent the document to Komori, and that Komori made the handwritten notes that appear on the document. (*See* Nakamura Reply [Doc. # 191] at 2; Komori Reply [Doc. # 192] at 2.)

Tada also testified that Komori[2] wrote notes on Nakamura's memorandum that included the statement "[d]o it quicker, this has taken over a year already" in response to Nakamura's statement regarding having Weber quit by May 2010. (*Id.* at 199:14–22.) Komori also wrote "the top of the American is a cancer, what is happening there," which Tada believed referred to Weber. (*Id.* at 232:11–234:21.) Plaintiff also relies on a July 28, 2008 memorandum written by Nakamura and Tada that discusses Weber's termination.[3] (*See* Nakamura Opp'n at 6; Komori Opp'n at 7.) The memorandum reads in part: "we would like to set the target timing for John Weber's layoff at around December of this year, considering his high usage value, so that system rebuilding could be achieved with full utilization of his resources." (July 28, 2009 Mem.)

II. Discussion

Federal Rule of Civil Procedure 26(c) provides that the Court "may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." Acting pursuant to Rule 26(c), a court may prohibit a party from deposing senior corporate executives where "the party has not established that the executive has some unique knowledge pertinent to the issues in the case" or where the party can obtain the desired information through less intrusive means. *Rodriguez v. SLM Corp.*, No.

---

[2] As above, Tada testified only that "the president" wrote the notes on Nakamura's memorandum (Tada Dep. at 199:14–17), however, Defendants acknowledged that it was Komori who wrote these notes (Nakamura Reply at 2; Komori Reply at 2.)

[3] Although Plaintiff claims that Tada and Nakamura sent this memorandum to Komori, according to Plaintiff's certified translation, the document is addressed to "President Furumori." (July 28, 2009 Mem., Ex. D to Nakamura Reply.) Plaintiff offers no explanation for this discrepancy, nor does he present evidence to suggest that the memo actually went to Komori.

3:07CV1866 (WWE), 2010 WL 1286989, *2 (D. Conn. March 26, 2010) (internal quotation marks omitted) (compiling cases).

Plaintiff has established, through Tada's deposition testimony and Nakamura's memoranda, that Nakamura and Komori appear to have some unique knowledge pertinent to Weber's termination from FMSU. Although Defendants argue that Tada made the decision to terminate Weber's employment (Komori Mem. Supp. at 6), Tada's testimony and the memoranda suggest that corporate leadership at FujiFilm Corporation, at least including Nakamura, Tada's superior, and Komori, Nakamura's superior, directed some aspects of the termination process. Nakamura and Komori therefore have unique knowledge about the nature and extent of their own involvement, and that of the leadership of FujiFilm Corporation as a whole, in the process that led to Weber's termination from FMSU.

The court in *Rodriguez* granted a motion for a protective order because the senior–level executives whose depositions the plaintiff sought had no "unique personal knowledge" of the private student loans at issue in that case. 2010 WL 1286989 at *1–3. Similarly, in other cases relied upon by Defendants, other courts disallowed depositions of corporate executives where those executives did not have unique personal knowledge relevant to the litigation, or the facts of which the executives had personal knowledge could be obtained through depositions of lower employees. *See, e.g., Thomas v. Int'l Bus. Mach.*, 48 F.3d 478, 483 (10th Cir. 1995) (affirming district court's protective order preventing plaintiff's deposition of IBM's Chairman of the Board of Directors as part of plaintiff's Age Discrimination in Employment Act suit where the Chairman "was unaware of [plaintiff's] age, her performance ranking, any work evaluations that she might have received, or that she even worked for IBM."); *Salter v. Upjohn Co.*, 593 F.2d 649, 651 (5th Cir. 1979) (upholding

protective order disallowing deposition of Upjohn's president where Upjohn indicated and made available lower employees who had "the most direct knowledge of the relevant facts"). Weber has presented evidence that Nakamura and Komori were personally involved and have unique knowledge of FujiFilm Corporation's reasons for and process of Weber's termination from FMSU. Given their executive positions at FujiFilm, evidence of their involvement, and that nothing presented in Defendants' filing persuades the Court that Weber can obtain this intent and purpose information elsewhere, Plaintiff is entitled to these depositions. The personal involvement of Nakamura and Komori, as demonstrated through Tada's deposition, distinguishes them from the executives in cases such as *Thomas*, 48 F.3d at 483, and *Salter*, 593 F.2d at 651, and Weber has accordingly met his burden to establish that their depositions in this matter are necessary and not merely "apex depositions" intended to harass.

III.     Conclusion

For the reasons stated above, Defendants' Motion for Protective Order Prohibiting the Deposition of Kazuo Nakamura [Doc. # 172] and Motion for Protective Order Prohibiting the Deposition of Shigetaki Komori [Doc. # 173] are DENIED. Counsel are directed to utilize the least burdensome means for obtaining this testimony.

IT IS SO ORDERED.

/s/
Janet Bond Arterton, U.S.D.J.

Dated at New Haven, Connecticut this 21st day of January, 2011.