UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

```
--------------------------------------------------------x
                                          :
JOHN J. WEBER                             :
                                          :              3:10 CV 401 (JBA)
                                          :
v.                                        :
                                          :
FUJIFILM  MEDICAL SYSTEMS, U.S.A.,        :              JULY 27, 2011
ET AL.                                    :
--------------------------------------------------------x
```

<u>RULING ON PENDING DISCOVERY MOTIONS</u>

   The factual and procedural history behind this vastly over-litigated lawsuit is set forth

in the considerable rulings of U.S. District Judge Janet Bond Arterton, and in the two

discovery rulings by this Magistrate Judge – Ruling on Plaintiff's Motion to Compel Documents

Claimed by Defendants to be Privileged, filed July 15, 2010 (Dkt. #98), 2010 WL 5834839;

Ruling on Plaintiff's Motion for Court Approval of Counsel's Contact with Former Employees

of Defendants and on Defendants' Cross-Motion for Protective Order in Relation to Plaintiff's

Request to Conduct <u>Ex Parte</u> Interviews of Former Employees, filed July 19, 2010 (Dkt. #99),

2010 WL 2836720; Ruling on Plaintiff's Objection to Ruling on Plaintiff's Motion for Court

Approval of Counsel's Contact with Former Employees of Defendants, filed December 3, 2010

(Dkt. #189); Ruling on Defendants' Motions for Protective Order Prohibiting the Depositions

of Kazuo Nakamura and Shigetaki Komori, filed January 24, 2011 (Dkt. #210), 2011 WL

677278; Ruling on Plaintiff's Objection to Magistrate Judge's Ruling, also filed January 24,

2011 (Dkt. #211), 2011 WL 677282; Ruling on Plaintiff's Motion to Compel Further

Deposition of Hioraki Tada, also filed January 24, 2011 (Dkt. #212), 2011 WL 282180; Ruling

on FUJIFILM Holdings Corporation's Motion to Dismiss for Lack of Personal Jurisdiction, filed

February 4, 2011 (Dkt. #220), 2011 WL 446895; Ruling on Motion to Compel Discovery, filed

February 17, 2011 (Dkt. #227), 2011 WL 674026; and Ruling on Plaintiff's Motion to Dismiss FUJIFILM Medical Systems U.S.A., Inc.'s Counterclaims, filed February 28, 2011 (Dkt. #233), 2011 WL 7811172.  (See also Dkts. ##22, 24, 41, 49, 94, 95, 96, 146, 150, 190, 197, 228, 231, 237, 240, 256, 260).

Except for the discovery at issue in the three pending motions addressed here, the discovery at issue in Plaintiff's Motion for Partial Reconsideration of the Court's February 17, 2011 Ruling on Defendants' Motion to Compel Discovery and Awards of Sanctions, filed February 25, 2011 (Dkt. #230; see also Dkts. ##232, 236), which is pending before Judge Arterton, and the depositions of Kazuo Nakamura and Shigetaka Komori to be held at the U.S. Embassy in Tokyo on August 22, 2011 (Dkt. #260), all discovery has been completed. (See Dkt. #231, at 13-21, 28-45).

Three discovery motions are presently pending before this Magistrate Judge.  First, on December 16, 2010, plaintiff filed his Motion to Compel Discovery Responses and for Costs and Fees, with brief and affidavit in support.  (Dkt. #198).[1]  On January 6, 2011,

---

[1]Thirty-seven exhibits were attached to the affidavit of counsel, sworn to December 16, 2010: copies of Plaintiff's First Set of Interrogatories and Requests for Production, directed to defendants, dated May 21, 2010 (Exhs. A-C); copies of written correspondence between counsel, dated June 18 and 22, July 12, October 15 and 29, November 8, 12, 23 and 29, and December 3, 2010 (Exhs. D, H, M, P, T, V-X, EE-HH); copies of defendants' Answers to Plaintiff's First Set of Interrogatories, undated or sworn to June 20 or 21, 2010 (Exhs. E-G); copies of defendants' Objections to Plaintiff's First Request for Production of Documents, dated June 22, 2010 (Exhs. I-K); copy of defendants' Responses and Objections to Plaintiff's First Request for Production of Documents, dated July 12 and 16, 2010 (Exh. L, N-O); copies of Plaintiff's Second Set of Interrogatories and Requests for Production, directed to defendants, dated October 15, 2010 (Exhs. Q-S); copies of e-mail correspondence between counsel, dated November 1, 2010 (Exh. U); copies of defendants' Responses and Objections to Plaintiff's Second Request for Production of Documents, dated or sworn to November 15, 2010 (Exh. Y-DD); excerpts from deposition of Hiroaki Tada, taken on April 29, 2010 (Exh. II); copy of Amended Privilege Log (Exh. JJ); and copy of supplemental to Responses to Second Set of Requests for Production of Documents (Exh. KK).

defendants filed their brief in opposition (Dkt. #204),[2] as to which plaintiff filed a reply brief two weeks later. (Dkt. #209).[3] Plaintiff filed a Supplemental Memorandum on April 18, 2011. (Dkt. #239).

Second, on April 18, 2011, plaintiff filed his Second Motion to Compel Discovery Responses and for Rule 37 Relief, with brief and affidavit in support. (Dkt. #238).[4] On May

---

[2]Three exhibits were attached: copy of written correspondence between counsel, dated January 3, 2011 (Exh. 1); excerpts from the deposition of Teresa Oakley, taken on December 6, 2010 (Exh. 2); and excerpts from the deposition of Pamela Doyle, taken on December 9, 2010 (Exh. 3).

[3]Four exhibits were attached: copy of written correspondence between counsel, dated January 19, 2011, with multiple attachments (Exh. A); copy of Revised Second Supplemental Privilege Log (Exh. B); copy of written correspondence between counsel, dated January 20, 2011, with attachment (Exh. C); copy of photographs of Board of Directors of defendant FUJIFILM Holdings Corp. (Exh. D); and additional excerpts form the Oakley deposition (Exh. E).

[4]Another thirty-two exhibits were attached to the affidavit of plaintiff's counsel, sworn to April 18, 2011: copy of Plaintiff's First Set of Interrogatories and Requests for Production Directed to Defendant FUJIFILM Corp., dated November 30, 2010 (Exh. A); copies of Plaintiff's Third Set of Interrogatories and Requests for Production, directed to defendants, also dated November 30, 2010 (Exhs. B-C); copies of defendants' Answers to Plaintiff's First Set of Interrogatories, dated December 30, 2010 (Exhs. D-E); copies of defendants' Answers to Plaintiff's Third Set of Interrogatories, also dated December 30, 2010 or sworn to December 25, 2010 (Exhs. F-H); copy of defendant's Responses and Objections of Plaintiff's Third Set of Requests for Production of Documents, also dated December 30, 2010 (Exh. I); copies of written correspondence between counsel, dated January 20, 25 and 31, February 16, March 8 and 22, 2011 (Exhs. J-L, N-P); copies of e-mail correspondence between counsel, dated January 22, February 8-9, and April 11, 2011 (Exhs. M, DD); copy of Supplemental Privilege Log (Exh. Q); copy of Revised Second Supplemental Privilege Log (Exh. R); copy of defendants' e-mails, dated October 27, 2009, and January 22, February 14 and 25, 2008, with attachment (Exh. R-1, V); copy of agreement, dated September 6, 2009, in Japanese and in English (Exh. S); copy of confidential memo, dated July 14, 2009, in Japanese and in English (Exh. T); excerpts from the deposition of Lawrence Hart, taken on November 12, 2010 (Exh. U); copy of defendant's Answers to Plaintiff's First Set of Interrogatories, sworn to June 20, 2010 (Exh. W); copy of confidential Audit Reports, dated September 30, 1996, October 18, 1999, April 30, 2002, November 26, 2004, November 30, 2007, and November 30, 2009 in Japanese and in English (Exh. X); excerpts from the deposition transcript of Ryutaro Hosoda, taken on August 31, 2010 (Exh. Y); defendant's memorandum, dated October 24, 2009, in Japanese and in English (Exh. Z); excerpts of telephonic conference before Judge Arterton on November 30, 2010 (Exh. AA); letter from defendant, dated October 10, 2008 (Exh. AA-1); and e-mails from defendant, dated October 22-23 and December 2, 2008, and October 19, 2009 (Exhs. BB-CC, EE).

9, 2011, defendants filed their brief in opposition (Dkt. #241),[5] as to which plaintiff filed his reply brief twenty-six days later. (Dkt. #244;[6] see also Dkts. ##243, 247).

On May 9, 2011, defendants also filed the third motion, their Motion to Seal Confidential Documents (Dkt. #242), as to which plaintiff filed his brief in opposition eighteen days later. (Dkt. #245). Defendants filed their reply brief on June 10, 2011. (Dkt. #250).

These three motions were referred to this Magistrate Judge on June 1, 2011. (Dkt. #248). For the reasons set forth below, plaintiff's Motion to Compel Discovery Responses and for Costs and Fees (Dkt. #198) is granted in limited part and denied in large part, plaintiff's Second Motion to Compel Discovery Responses and for Rule 37 Relief (Dkt. #238) is granted in part and denied in part, and defendants' Motion to Seal Confidential Documents (Dkt. #242) is granted.

## I. DISCUSSION

### A. PLAINTIFF'S MOTION TO COMPEL (Dkt. #198)

Of the five issues raised in plaintiff's motion (see Dkt. #198, Brief at 8-20), two have been resolved during the telephone conferences held with Judge Arterton on November 30, 2010 and February 18, 2011 (Dkt. #239, at 1-2) and three remain for decision by the Court (id. at 2).

#### 1. ELECTRONIC COMMUNICATIONS

At issue here is plaintiff's First Set of Requests for Production No. 15 directed to defendant FUJIFILM Medical Systems USA, Inc. ["defendant FMSU"], which seeks any and

---

[5]Attached as Exh. 1 is a copy of correspondence between counsel, dated May 9, 2011.

[6]Attached as Exh. 1 is a copy of the First Amended Complaint, filed April 21, 2011, in FUJIFILM Medical Systems U.S.A., Inc. v. Weber, filed in the Supreme Court of the State of New York, County of Westchester.

all communications by or to defendant Hiroaki Tada ["defendant Tada"] regarding the merging into defendant FMSU of Empiric and/or Problem Solving Concepts, Inc. (a/k/a Pro Solv) from 2008 through 2010, as to which defendant FMSU objected on a variety of grounds but without waiving its objections, indicated that responsive documents previously had been produced in response to a subpoena served on defendant Tada.  (Dkt. #198, Brief at 8 & Exhs. A, N).

From written correspondence between counsel on July 16, October 15, November 8, 12, 23 and 29, and December 3, 2010, the crux of this dispute is the discovery of <u>a single e-mail</u>, dated February 2, 2009 (JW-608) that had not been produced by defendant FMSU, which defendant explained may have been deleted in the normal course of business prior to a litigation hold being placed on defendant FMSU's computer system on March 11, 2010; in addition to the electronically stored information ["ESI"] search of plaintiff's e-mails from October 2009 through January 2010 provided to plaintiff, defendant FMSU offered to produce plaintiff's sent e-mails from February-April 2009, but plaintiff insisted on all of plaintiff's sent e-mails during the time defendant Tada was President and CEO, as well as multiple search terms in the e-mail files of defendant Tada, Jonathan File and Teresa Oakley in 2009.  (<u>Id.</u> at 8-12 & Exhs. A, E, P, V, X, EE-HH).  In addition, plaintiff argues that the litigation hold was untimely, in that litigation was anticipated no later than July 14, 2009.  (<u>Id.</u> at 12-13 & Exhs. II-JJ).

In their brief in opposition, defendants have represented that plaintiff's motion is moot on this point, in that defendant FMSU previously reviewed more than 5,600 e-mails and more than 70,000 pages of documents, of which only ninety-six pages were responsive, that it reviewed an additional 2,100 pages of documents from February-April 2009, all of which

were either non-responsive, already had been produced, or were "highly confidential" or privileged with respect to an unrelated lawsuit. (Dkt. #204, at 2-3 & nns. 2-3 & Exh. 1). In addition, to the extent that plaintiff seeks clarification of how defendant FMSU preserved its back-up tapes of e-mails, defendants argue that "this new demand is inappropriate and untimely . . . . because [p]laintiff never issued this discovery demand." (Id. at 3).

In his reply brief, plaintiff argues that the issue is not moot, in that on January 3, 2011, defendants produced an additional ninety-seven pages of documents as result of the new search, on January 19, 2011, defendants provided three complete e-mail chains (DEF7298-7315), defendants added 332 new pages of documents claimed to be privileged, and the "newly discovered" e-mails found in DEF7310-14 are the only e-mails produced between defendant Tada and Mr. Takahashi, who is the second highest ranking official of defendant FUJIFILM Holdings Corporation ["defendant FH"] in Japan. (Dkt. #209, at 1-5 & Exhs. A, D). Plaintiff contends that this course of events "doesn't add up and is cause for additional concern[,]" thus "highlight[ing] the need for Court intervention with respect to [d]efendants' handling of discovery in this matter overall . . . ." (Id. at 2, 4). With regard to the requested supplementation of what steps were taken to preserve back-up tapes of e-mails, plaintiff points to Interrogatories Nos. 4-5 of his First Set of Interrogatories, which sought that very information. (Id. at 4-5; see also Dkt. #198, Brief, Exhs. A, B, E).

Despite plaintiff's arguments, the Magistrate Judge agrees with defendants that the issue is moot with respect to Request No. 15 of plaintiff's First Set of Requests for Production directed to defendant FMSU, which is the discovery dispute raised in this motion, and not Interrogatories Nos. 4-5 of his First Set of Interrogatories. Defendant FMSU has produced the new documents it found through its additional search. In an abundance of caution,

however, in order to satisfy plaintiff that he has received all responsive, non-privileged documents, **on or before August 8, 2011**, defendant FMSU shall provide to this Magistrate Judge's Chambers copies of the 332 new pages that appear on defendant FMSU's Revised Second Supplemental Privilege Log, for her in camera review on the issue of privilege. See Ruling on Plaintiff's Motion to Compel Documents Claimed by Defendants to be Privileged, filed July 15, 2010 (Dkt. #98), 2010 WL 5834839; Ruling on Plaintiff's Objection to Magistrate Judge's Ruling, filed January 24, 2011 (Dkt. #211), 2011 WL 677282. Thus, plaintiff's motion is granted in limited part on this issue.

### 2. BOARD MEETING MINUTES FROM 1986 THROUGH THE PRESENT

Plaintiff's Second Set of Requests for Production No. 2, directed to defendant FUJIFILM Holdings America Corporation ["defendant HLUS"] seeks copies of all Board of Directors meeting minutes from 1986 through the present of both defendant HLUS and defendant FMSU; while defendant HLUS objected on a variety of grounds, it agreed to produce certain documents, without waiving its objection. (Dkt. #198, Brief at 16-17 & Exhs. R, Z). After an exchange of written correspondence on November 15, 23 and 29, and December 3, 2010, defendants produced Board Minutes of defendant FMSU from 1987, 1988, 1992, 1998, 2001 and 2006, relating to defendant FMSU's profit sharing plan. (Id. at 16-17 & Exhs. Z, EE-FF, HH, KK). In this motion, plaintiff seeks the Board meeting minutes from both corporations on all issues for all twenty-five years since 1986. (Id. at 16-17).

In their brief in opposition, defendants represent that they have produced all portions of board meeting minutes that "include references [they] can identify as relevant to [p]laintiff's claims." (Dkt. #204, at 3-4). In his reply brief, plaintiff asserts that these minutes may be relevant to defendant FMSU's counterclaims against plaintiff regarding

Louise Collins, as well as "may reflect [on] [p]laintiff's performance as an executive at [defendant] FMSU . . . ." (Dkt. #209, at 6-7). In light of defendants' representations that they have produced all relevant minutes of both boards, plaintiff's motion is denied on this issue.

### 3. RESPONSIVE DOCUMENTS IDENTIFIED IN DEPOSITIONS THAT HAVE NOT BEEN PRODUCED

At her deposition, taken on December 6, 2010, of Teresa Oakley, defendant FMSU's Vice President of Human Resources, Oakley testified that she kept her own notes regarding personnel issues in which she was involved, including those relating to plaintiff's termination; plaintiff contends that these notes are responsive to at least four of his First Requests for Production directed to defendant FMSU, namely Requests Nos. 5, 9, 12 and 16. (Dkt. #198, Brief at 18-19 & Exh. A). Similarly, at the deposition of Pamela Doyle, defendant FMSU's Manager of Payroll and Benefits, Doyle testified that she had about fifteen to twenty personal notes regarding the Collins matter, of which defendants have produced only "about six" notes; plaintiff posits that these notes are responsive to at least four of his Second Requests for Production directed to defendant FMSU, namely Requests Nos. 1, 3, 17 and 22. (Id. at 19-20 & Exh. Q).

In their brief in opposition, defendants argue that plaintiff has misstated the Oakley and Doyle testimony, but that plaintiff's motion is moot because all the notes have been produced. (Dkt. #204, at 5-6 & Exhs. 2-3). In his reply brief, plaintiff asserts that Oakley testified that she kept a notebook for follow-up actions and "may" have notes in her notebook regarding plaintiff's claim for benefits under the Supplemental Executive Retirement Plan ["SERP"], and that plaintiff only received six of the fifteen to twenty notes written by Doyle. (Dkt. #209, at 7-8 & Exh. E).

To the extent that Oakley has any additional entries in her notebook pertaining to plaintiff that have not already been produced, defendant FMSU shall produce copies of such entries **on or before August 5, 2011**. Therefore, plaintiff's motion is granted in part regarding the Oakley notebook and denied as moot with respect to the Doyle notes.

### 4.  SUMMARY

Thus, plaintiff's Motion to Compel (Dkt. #198) is <u>granted to the limited extent that</u> **<u>on or before August 8, 2011,</u>** <u>defendant FMSU shall provide to the Magistrate Judge's</u> <u>Chambers copies of the 332 new pages that appear on its Revised Second Supplemental</u> <u>Privilege Log, for her in camera  review on the issue of privilege; is granted to the limited</u> <u>extent that</u> **<u>on or before August 5, 2011</u>** <u>defendant FMSU is to produce any entries</u> <u>pertaining to plaintiff in the Oakley notebook that have not already been produced; and is</u> <u>denied in all other respects</u>.[7]

### B.  PLAINTIFF'S SECOND MOTION TO COMPEL

Six issues are raised in this motion.

### 1.  ELECTRONIC COMMUNICATIONS

At issue here is plaintiff's First Set of Interrogatories No. 4 directed to defendant FUJIFILM Corporation ["defendant FF"], which seeks a description of the efforts taken by defendant FF to preserve any ESI that may be discoverable in this matter, including the names and titles of any individuals employed by defendant responsible for such measures, as to which defendant FF objected on a variety of grounds but without waiving its objections,

---

[7]Although plaintiff's motion and brief are captioned as requests for "Costs and Fees," no discussion of this topic is found in either of plaintiff's briefs (Dkt. #198, Brief & Dkt. #209), but only in defendants' brief in opposition.  (Dkt. #204, at 6).  Attorney's fees and costs are not listed among the items left for judicial decision in plaintiff's Supplemental Memorandum.  (Dkt. #239, at 2).  Therefore, even assuming <u>arguendo</u> that the Court needs to address this issue, plaintiff's request for attorney's fees and costs is <u>denied</u>.

indicated that Kazuya Mishima, General Manager of defendant FF's Legal Division issued a Litigation Hold Notice on September 28, 2010 to all relevant FF employees. (Dkt. #238, Brief at 8 & Exhs. A, D). Plaintiff argues that defendant FF's delay in not placing a litigation hold until September 28, 2010 is "inexplicable[,]" resulting in prejudice to plaintiff due to the likely destruction of ESI in the fourteen month period from July 14, 2009, when defendant FF's upper management first "[a]ssume[d]" there would be legal action regarding plaintiff's layoff, until late September 2010, some seven months after plaintiff first filed his lawsuit in state court. (Id., Brief at 9-10 & Exhs. J, N, O, S, T). See Zubulake v. UBS Warburg, LLC, 220 F.R.D. 212, 216-17 (S.D.N.Y. 2003)(in an employment case, litigation hold should take place when "almost everyone associated with [plaintiff] recognized the possibility that she might sue."). As an example, plaintiff cites to defendants' inability to find additional ESI regarding similarly situated employees, despite the fact that such documents do exist. (Id. at 10-11 & Exhs. I, U, V). Plaintiff contends that defendants' "consistent" repetition that there is no indication that any ESI was lost is "patently insufficient" and deserving of sanctions, including an adverse inference instruction at trial. (Id. at 11-13 & Exhs. D, O, W)(citations omitted).

In their brief in opposition, defendants counter that plaintiff's arguments fall far short of the substantial burden placed on a party seeking a spoliation/adverse inference instruction (Dkt. #241, at 2-3, 10); that for the sole example of documents that were destroyed, it was the employee himself, not defendants, who destroyed the documents and that the other documents were not destroyed (id. at 3; see also Dkt. #238, Exh. C); and that plaintiff's new request for defendants to search back-up tapes, which may be inaccessible, is untimely and "would impose a substantial and wholly unjustified cost." (Dkt. #241, at 3-5).

In his reply brief, plaintiff again asserts that he "has not been afforded a full

opportunity to assess whether [ESI] was lost to [d]efendants' preservation and/or collection procures[,]" and the order sought by plaintiff is "not unreasonable." (Dkt. #244, at 5-6).

Unlike in <u>Zubulake</u>, defendants have not yet demonstrated that the backup tapes sought to be searched from the period July 2009 through September 2010 are "inaccessible backup tapes (e.g., those typically maintained for the purpose of disaster recovery)." 220 F.R.D. at 218. **If** the backup tapes exist for this time period, and if they are not inaccessible, then defendant FF shall search these backup tapes and provide copies of any newly revealed documents, if any, to plaintiff, **on or before August 15, 2011**. **If, however**, the backup tapes no longer exist, or if they are inaccessible, then no further production is necessary. Thus, plaintiff's motion is granted to the limited extent set forth above. The issue of an adverse inference should be raised before Judge Arterton prior to trial in a motion <u>in limine</u>.

<u>2. MEETINGS OF DEFENDANT FF MEDICAL BUSINESS PERSONNEL IN WHICH DEFENDANT FMSU IS MENTIONED</u>

Also at issue is plaintiff's First Set of Requests for Production No. 7 directed to defendant FF, which seeks any and all documents constituting, relating or referring to any meetings of defendant FF's or its predecessor's medical business personnel in which defendant is mentioned from 1986 through the present, as to which defendant FF objected on a variety of grounds but without waiving its objections, ultimately produced Board of Director meeting minutes of defendant FF from 2005, 2006, 2008 and 2010 in which defendant FMSU was mentioned. (Dkt. #238, Brief at 13-15 & Exhs. A, E, N, O). Plaintiff argues that he should not be limited only to Board of Director meetings for the period 2007 through 2009. (<u>Id.</u> at 14-15).

Defendants responded that plaintiff's request is "unreasonably broad" as it covers <u>any and all</u> meetings of defendant FF, a multi-national company, that reference defendant

FMSU and/or plaintiff, for a two-year period, and that it has produced all documents regarding plaintiff's termination, none of which "makes any reference to other meetings that impacted the decision to terminate [p]laintiff's employment." (Dkt. #241, at 5).[8]

The Magistrate Judge agrees with defendants that plaintiff's request is, indeed, unreasonably broad, and no further production is required.

### 3. DOCUMENTS CONSTITUTING OF, REFERRING TO, OR RELATING TO ANY AUDITS DONE OF ANY SUBSIDIARY OF DEFENDANT HLUS FROM 2006-10

At issue here is plaintiff's First Set of Requests for Production No. 10 directed to defendant FF, plaintiff's Third Set of Requests for Production No. 6 directed to defendant HLUS, and plaintiff's Third Set of Requests for Production No. 6 directed to defendant FMSU, which seek production of documents consisting of, referring to or relating to any audits done of any subsidiary of FUJIFILM Holdings America Corporation from 2006-10, as to which defendants objected on a variety of grounds but without waiving their objections, produced the late 2008 KPMG audit of defendant FMSU only. (Dkt. #238, Brief at 15-16 & Exhs. A-C, E, G, I). Plaintiff contends that he is entitled to all other audits, which he believes will support his allegations here, as DEF7352-53 and 7381-84 demonstrated. (Id. at 16-18 & Exhs. P, X-Z). Plaintiff wants access to additional documents, other than the thirty-two page Executive Summary issued by KPMG in January 2009 and the 1500 documents plaintiff received from his subpoena to KPMG regarding its 2009 review of defendant FMSU. (Id. at 18-19 & Exhs. O, AA-1, BB-DD). Plaintiff asks that defendants be required to produce all documents in their possession relevant to the KPMG review of defendant FMSU or be prevented from presenting evidence as to their claim that the KPMG review played any role in their decision to terminate plaintiff. (Id. at 19).

---

[8]Plaintiff makes no further arguments in his reply brief on this issue. (Dkt. #244, at 7).

In their brief in opposition, defendants represent that they have supplemented their responses to plaintiff's recent demand. (Dkt. #241, at 6-7 & Exh. 1).[9] Therefore, plaintiff's motion is denied as moot with respect to this issue.

### 4. INFORMATION PROVIDED BY FORMER PRESIDENTS REGARDING DEFENDANT FMSU'S COUNTERCLAIMS

At issue here is plaintiff's Third Set of Interrogatories No. 5 directed to defendant HLUS and plaintiff's Third Set of Interrogatories No. 7 directed to defendant FMSU, which inquire whether any former President of defendant FMSU has been contacted with respect to the matters raised by defendant FMSU's counterclaims, and if so, additional information about those contacts, as to which defendants objected on a variety of grounds but without waiving their objections, provided the names of four former Presidents who were contacted in the first or second quarters of 2010 by defense counsel or defendant HLUS' Legal Department. (Dkt. #238, Brief at 20 & Exhs. B-C, F). Plaintiff argues that this information remains relevant, despite dismissal of the counterclaims, see Ruling on Plaintiff's Motion to Dismiss FUJIFILM Medical Systems U.S.A., Inc.'s Counterclaims, filed February 28, 2011 (Dkt. #233), 2011 WL 7811172, as defendants insist it is "after-acquired evidence" of wrongdoing of plaintiff, and that no privilege pertains to fact-sharing. (Id. at 20-22)(multiple citations omitted).

In their brief in opposition, defendants argue that these communications with defendant FMSU's former Presidents are subject to the attorney-client privilege, under Peralta v. Cendant Corp., 190 F.R.D. 38, 41-42(D. Conn. 1999)(Arterton, J.). (Dkt. #241, at 7-8).

---

[9]Plaintiff has not addressed this issue in his reply brief, other than to point out that defendants did not oppose or otherwise respond to plaintiff's one-sentence request for production of translations of this document. (Dkt. #244, at 10; see also, Dkt. #238, Brief at 19 & Exh. DD). Therefore, if not already done so, defendants shall provide translations **on or before August 15, 2011**.

In his reply brief, plaintiff suggests that this Court should "revisit its decision in Peralta" in light of the more recent decision of Infosystems, Inc. v. Ceridian Corp., 197 F.R.D. 303, 304-07 (E.D. Mich. 2000), and that defendants have not met their burden of establishing the essential elements of the attorney-client privilege. (Dkt. #244, at 7-8). In Infosystems, issued in 2000, just one year after Peralta, the district judge in Michigan found that "the ruling in Peralta sweeps too broadly." 197 F.R.D. at 305.

This Court declines to "revisit" Peralta, particularly when it has been cited with approval in numerous district court decisions issued within Second Circuit, one as recently as two months ago. See, e.g., Gary Freidrich Enterprises, LLC v. Marvel Enterprises, Inc., No. 08 Civ. 1533(BSJ)(JCF), 2011 WL 2020586, at *5-7 (S.D.N.Y. May 20, 2011); Gioe v. AT & T, Inc., No. CV 09-4545 (LDW)(AKT), 2010 WL 3780701, at *1-3 (E.D.N.Y. Sept. 20, 2010)(relying almost exclusively on Peralta); Nicholls v. Philips Semiconductor Mfg, No. 07 Civ. 6789, 2009 WL 2277869, at *1-3  (S.D.N.Y. July 27, 2009);  Price v. Porter Novelli, Inc., No. 07 Civ. 5869 (PAC), 2008 WL 2388709, at *1-2 (S.D.N.Y. June 11, 2008)(relying almost exclusively on Peralta); Export-Import Bank of U.S. v. Asia Pulp & Paper Co., Ltd., 232 F.R.D. 103, 112 (S.D.N.Y. 2005);  Wade Williams Distrib., Inc. v. Am. Broad. Cos., Inc., No. 00 Civ. 5002 (LMM), 2004 WL 1487702, at *1-2 (S.D.N.Y. June 30, 2004)(relying almost exclusively on Peralta); Surles v. Air France, No. 00 CIV 5004 (RMB)(FM), 2001 WL 815522, at *5-6 (S.D.N.Y. July 19, 2001), approved on other grounds over objection, 2001 WL 1142231 (S.D.N.Y Sept. 27, 2001).  As the Magistrate Judge observed in Gary Freidrich Enterprises: "Virtually all courts hold that communications between company counsel and former company employees are privileged if they concern information obtained during the course of employment."  2011 WL 2020586, at *5 (citations & internal quotations omitted).  He

then quoted from the <u>Surles</u> decision, which was consistent with <u>Peralta</u>: "The vast majority of federal cases hold that communications between company counsel and former company employees are protected by the attorney-client privilege if they are focused on exploring what the former employee knows as a result of his prior employment about the circumstances given rise to the lawsuit." <u>Id.</u> (citations omitted).[10] <u>See also</u> Ruling on Plaintiff's Motion for Court Approval of Counsel's Contact with Former Employees of Defendants and on Defendants' Cross-Motion for Protective Order in Relation to Plaintiff's Request to Conduct <u>Ex Parte</u> Interviews of Former Employees, filed July 19, 2010 (Dkt. #99), 2010 WL 2836720 at *1 (referencing <u>Peralta</u>), adopted over objection, Ruling on Plaintiff's Objection to Ruling on Plaintiff's Motion for Court Approval of Counsel's Contact with Former Employees of Defendants, filed December 3, 2010 (Dkt. #189).

### 5. DOCUMENTS CONSTITUTING OF, REFERRING TO, OR RELATING TO SALARY CONTINUATION AND HEALTH INSURANCE CONTINUATION

At issue here is plaintiff's Third Set of Requests for Production Nos. 14-15 directed to defendant HLUS and Third Set of Requests for Production Nos. 16-17 directed to defendant FMSU, which seek any and all documents pertaining to the continuation of salary and health insurance benefits for all employees terminated from 1986 to the present, as to which defendants HLUS and FMSU objected on a variety of grounds. (Dkt. #238, Brief at 22-23 & Exhs. B-C, G, I). As in Section I.B.4 <u>supra</u>, plaintiff contends that this information is relevant to defendants' assertion of after-acquired evidence of wrongdoing by plaintiff. (<u>Id.</u> at 23).

In their brief in opposition, defendants argue that plaintiff's requests are overly broad,

---

[10]According to WESTLAW, there are no published decisions in the Second Circuit citing the <u>Infosystems</u> ruling.

covering twenty-six years, when only the period 1997 through 2009 would be relevant, and would include "highly confidential" severance and separation agreements and COBRA payments; in addition, defendants point out that defendant FMSU already "has provided substantial documentation pertaining to its after-acquired evidence defense" and plaintiff has had the opportunity to depose defendant FMSU's former and current Human Resources Managers, who could testify on these issues. (Dkt. #241, at 8-9).

In his reply brief, plaintiff counters that he <u>did</u> offer to exclude customary COBRA benefits from his discovery request, for the period 1986 through the present, and in defendant FMSU's recently filed action in New York State Court, defendant FMSU includes not only the Collins matter but other "'recently' discovered" claims of misconduct. (Dkt. #244, at 8-10 & n.11 & Exh. 1; <u>see also</u> Dkt. #238, Brief, Exh. N).

Defendants are correct that plaintiff's requests for a twenty-six year period are vastly overbroad. **On or before August 15, 2011**, defendants are to provide copies to plaintiff's counsel of any non-privileged documentation, for the twelve-year period 1997 to 2009, regarding the continuation of salary or health benefits, beyond customary COBRA benefits, to the extent that such documentation has not been previously disclosed to plaintiff. Thus, plaintiff's motion to compel is granted to the limited extent set forth above.

<u>6. PRIVILEGE CLAIMS</u>

Plaintiff now "renews" to his privilege arguments with respect to the new documents "related to the purported Empiric 'merger'" found in defendants' supplemental privilege logs, and further argues that defendants have waived their privilege "by selectively producing redacted portions of the subject communications[,]" for example, DEF 4225-26 & DEF PRIV 022. (Dkt. #238, at 23-24 & Exhs. R & EE).

In their brief in opposition, defendants correctly assert that the issue of privilege has now been twice resolved against plaintiff, by this Magistrate Judge and by Judge Arterton, but defendants fail to address the issue of waiver. (Dkt. #241). In his reply brief, plaintiff further argues that defendants should be compelled to produce all documents listed on its privilege logs related to "Auric Capital Corp.," "Kenneth Ostrowsky" and/or "De Lage Laden ('DLL')". (Dkt. #244, at 10; see also Dkt. #238, Exhs. Q-R).

As set forth in Section I.A.1 supra, the Magistrate Judge already has ordered an in camera review of the additional 332 pages in defendants' Second Revised Supplemental Privilege Log, which review will consider plaintiff's waiver argument. However, to the extent that there are documents that are relevant to claims made only in the New York State lawsuit, and not in this federal action, plaintiff's motion is denied – the parties here already have overburdened Judge Arterton, and to a lesser extent this Magistrate Judge, with their incessant discovery disputes – a burden which can now be borne by the judges in the New York state court system.

### 7.  SUMMARY

Thus, for the reasons stated above, plaintiff's Second Motion to Compel (Dkt. #238) is granted in limited part with respect to ESI in that **if** the backup tapes exist for this time period, and if they are not inaccessible, then defendant FF shall search these backup tapes and provide copies of any newly revealed documents, if any, to plaintiff, **on or before August 15, 2011**, but **if** the backup tapes no longer exist, or if they are inaccessible, then no further production is necessary; is granted in part with respect to documents regarding the continuation of salary or health benefits in that **on or before August 15, 2011**, defendants are to provide copies to plaintiff's counsel of any non-privileged documentation,

for the twelve-year period 1997 to 2009, regarding the continuation of salary or health benefits, beyond customary COBRA benefits, to the extent that such documentation has not been previously disclosed to plaintiff; with respect to privilege, is granted in limited part to the extent that an in camera review has been ordered of the additional 332 pages in defendants' Second Revised Supplemental Privilege Log, which review will consider plaintiff's waiver argument; and is denied in all other respects.[11]

C.  DEFENDANTS' MOTION TO SEAL

In their Motion to Seal Confidential Documents, defendants contend that five of plaintiff's exhibits attached to plaintiff's brief in support of his Second Motion to Compel (Dkt. #238, Brief) contain confidential and sensitive information – namely Exhs. P, X, AA-1, BB and CC -- and request that these five exhibits be sealed pursuant to Local Rule 5(e).  (Dkts. #242, 250).  Plaintiff objects on the grounds that defendants have failed to comply with Local Rule 5(e)(4).  (Dkt. #245).

After a careful review of these five documents, the Magistrate Judge agrees that these five documents – which contain separation agreement of former employees  unrelated to this litigation (Exh. P), and internal audits marked "Confidential" or "Confidential Subject to Protective Order" (Exh. X, AA-1, BB-CC) – ought to be placed under seal.

Therefore, defendants' Motion to Seal Confidential Documents (Dkt. #242) is hereby granted.

---

[11]As addressed in note 7 supra, plaintiff's motion and brief asks for "Rule 37 Relief" (Dkt. #238 & Brief), without any further discussion of attorney's fees and costs, as to which defendants object.  (Dkt. #241, at 9-10).  This issue is not addressed in plaintiff's reply brief.  (Dkt. #244). Even assuming arguendo that plaintiff is seeking attorney's fees and costs with respect to this motion, plaintiff's request is denied.

## II.  CONCLUSION

For the reasons stated above, plaintiff's Motion to Compel Discovery Responses and for Costs and Fees (Dkt. #198) is <u>granted in limited part and denied in large part</u>, plaintiff's Second Motion to Compel Discovery Responses and for Rule 37 Relief (Dkt. #238) is <u>granted in part and denied in part</u>, and defendants' Motion to Seal Confidential Documents (Dkt. #242) is <u>granted</u>.

This is not a Recommended Ruling but a Ruling on discovery, the standard of review of which is specified in 28 U.S.C. § 636; FED. R. CIV. P. 6(a), 6(e) & 72; and Rule 72.2 of the Local Rules for United States Magistrate Judges.  As such, it is an order of the Court unless reversed or modified by the District Judge upon timely made objection.

<u>See</u> 28 U.S.C. § 636(b)**(written objections to ruling must be filed within fourteen calendar days after service of same);** FED. R. CIV. P. 6(a), 6(e) & 72; Rule 72.2 of the Local Rules for United States Magistrate Judges, United States District Court for the District of Connecticut; <u>Small v. Secretary, H&HS</u>, 892 F.2d. 15, 16 (2d Cir. 1989)**(failure to file timely objection to Magistrate Judge's recommended ruling may preclude further appeal to Second Circuit).**[12]

Dated at New Haven, Connecticut, this 27th day of July, 2011.


   _/s/ Joan G. Margolis, USMJ___
Joan Glazer Margolis
United States Magistrate Judge

---

[12]If any counsel believes that a continued settlement conference before this Magistrate Judge would be productive, he or she should contact Chambers accordingly.  (<u>See</u> Dkts. ##246, 259).