UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

JOHN J. WEBER,

           Plaintiff,

   v.

FUJIFILM MEDICAL SYSTEMS
U.S.A., INC., ET AL.,

       Defendants.

Civil Action No.:
3:10-cv-401 (JBA)

MARCH 30, 2012

**PLAINTIFF'S PROPOSED JURY INSTRUCTIONS**

1

1.      **RESPONDEAT SUPERIOR/AGENCY**

During these instructions, I may refer at times to Defendants FMSU, HLUS or FUJIFILM Corporation and at other times to their executives, including Shigetaka Komori, Kazuo Nakamura, Hiro Sakai, Ryutara Hosoda, Hiroaki Tada, Jonathan File, and others. Corporations act through their executives and managers and are therefore legally responsible for the actions taken by them.  One relationship for which the law imposes liability upon one party for the conduct of another is an agency relationship.

In this case, the executives and managers are agents of FMSU, HLUS and/or FUJIFILM Corporation and those companies are liable for the intentions, acts and failures to act of those individuals if you find that they were acting within the scope of their employment when they took action or failed to take certain action and for what their intention was in doing so.  These preconditions establish an agency relationship for which the companies may be held responsible.

Finding an agency relationship also means that you may consider the statements of executives and managers, whether made in written letters or memoranda, or in a deposition or at trial, to be admissions of the companies.  You may also consider any knowledge of or notice to any executive or manager of the companies to be the same as knowledge of or notice to the companies on any issue where knowledge of or notice to the companies is an issue before you.

Wright, Fitzgerald and Ankerman, Connecticut Law of Torts. '63 (3rd Ed. 1991)
Wright and Ankerman, Connecticut Jury Instructions (Civil), '21 (4th ed. 1993)

**2.     DISCRIMINATION ON THE BASIS OF RACE NATIONAL ORIGIN OR ETHNICITY/ANCESTRY UNDER TITLE VII OF THE CIVIL RIGHTS ACT**

Under Title VII of the Civil Rights Act of 1964, it is unlawful for an employer to fail to promote or to discharge or demote an individual or to otherwise discriminate against an individual with respect to compensation, terms, or conditions, or privileges of employment, because of the individual's race, national origin and/or ethnicity/ancestry.  The Plaintiff, John Weber, claims that the Defendants intentionally discriminated against him by terminating his employment on the basis of his race, White and non-Asian; national origin in America and/or his ethnicity/ancestry which is American of mixed European background.  Defendants deny these claims.  It is your responsibility to determine whether Mr. Weber has proven his claims by a preponderance of the evidence.  To succeed on his claim, Mr. Weber must prove by a preponderance of the evidence that his race, national origin and/or ethnicity/ancestry was a motivating factor in the decision of Defendants to terminate his employment and to subject him to other adverse employment actions.

In showing that any of these characteristics was a motivating factor, Mr. Weber is not required to prove that they were the sole motivation or even the primary motivation for Defendants' decisions.  In fact, you may decide that other factors were involved in the Defendants' decision-making process and still find in his favor.  Mr. Weber need only prove that any one of these characteristics played a motivating part in Defendants' decisions even though other factors may also have motivated them.

42 U.S.C. § 2000e-2(a)

Todd J. McNamara and J. Alfred Southerland, *Federal Employment Jury Instructions,* § 1:200 (Feb 2006) (hereinafter "FEJI")

3.    **RACE, NATIONAL ORIGIN, ETHNICITY/ANCESTRY AND/OR AGE DISCRIMINATION UNDER CONNECTICUT FAIR EMPLOYMENT PRACTICES ACT**

Connecticut's state law also prohibits discriminating against a person because of his race, national origin, ethnicity/ancestry and, in addition, age.  Mr. Weber claims that the Defendants also violated the Connecticut Fair Employment Practices Act ("CFEPA"), which prohibits such discrimination.

To prevail on his state claim of discrimination, Mr. Weber must prove by a preponderance of the evidence that the Defendants discriminated against him because of his race, national origin, ethnicity/ancestry and/or age.  Under CFEPA, you may also find an individual Defendant or another company liable if it aided or abetted an employer in discriminating against an employee.

To succeed on his claim, Mr. Weber must prove by a preponderance of the evidence that his race, national origin,  ethnicity/ancestry and/or age was a motivating factor in the decision of Defendants to terminate his employment and to subject him to other adverse employment actions.

In showing that any of these characteristics was a motivating factor, Mr. Weber is not required to prove that they were the sole motivation or even the primary motivation for Defendants' decisions.  In fact, you may decide that other factors were involved in the Defendants' decision-making process and still find in his favor.  Mr. Weber need only prove that

5

any one of these characteristics played a motivating part in Defendants' decisions even though other factors may also have motivated them.

**4.**     **RETALIATION UNDER TITLE VII AND THE CFEPA**

Both Title VII and the CFEPA also prohibit an employer from retaliating against an employee for engaging in protected activity.   Mr. Weber claims that his termination was classified as for "cause" at least in part because he had complained to Mr. Tada about his treatment as the only American officer of FMSU.

In order for Mr. Weber to prevail on his claim of retaliation pursuant to Title VII and CFEPA, he must prove by a preponderance of the evidence that:

1)     He engaged in protected activity known to Defendants;

2)     He was subject to an adverse employment action; and

3)     There is a causal connection between the protected activity and the adverse employment action.

Mr. Weber need not prove that he was discriminated against in order to recover on a claim of retaliation.   In fact, you are not to consider whether the actions that Mr. Weber complained of were actually discriminatory in deciding whether he was retaliated against for complaining about them.

As to the first element, that Mr. Weber engaged in a protected activity known to Defendants, Mr. Weber cites his email to Mr. Tada regarding the October 27, 2009 meeting concerning Empiric.  His email complained of what he viewed as differential treatment based upon his status as the only American officer of FMSU.  Thus, Mr. Weber has satisfied the first element of his claim of retaliation.

As to the second element, that Mr. Weber suffered an adverse employment action, in considering whether actions by Defendants constitute adverse employment action, you are to determine whether Defendants engaged in a materially adverse action that would dissuade a reasonable worker from making or supporting a charge of discrimination.  You should consider whether an action is materially adverse according to the perspective of a reasonable person in Mr. Weber's position and all of the circumstances surrounding Defendants' actions.  I instruct you further that an adverse employment action by an agent is an action of the employer.  Mr. Weber claims that the manner in which Defendants carried out the termination of his employment was an adverse employment action.

As to the third element, you must consider whether a causal connection exists between the protected activity and any of the employment actions that you have determined to be adverse. In order to show that a causal connection exists, Mr. Weber must prove by a preponderance of the evidence that his complaint of discrimination was a motivating factor in the employment actions of which he now complains.  The mere fact that Mr. Weber made complaints of discrimination and thereafter suffered an adverse employment action is not sufficient unless connected to establish his claim of retaliation.  In showing that retaliation was a motivating factor in Defendants' actions with respect to Mr. Weber, Mr. Weber need not prove that his complaint was the sole motivation for Defendants' decisions.  He need only show that they played a part.  A showing of an adverse employment action shortly after an employee engages in

protected activity may, but is not necessarily, indicative of a causal connection between the adverse employment action and the protected activity.

*Tomka v. Seiler,* 66 F.3d 1295, 1308 (2d Cir. 1995)

**5.    DISCRIMINATION ON THE BASIS OF AGE UNDER THE AGE DISCRIMINATION IN EMPLOYMENT ACT**

Under the Age Discrimination in Employment Act, it is unlawful for an employer to make an employment decision on the basis of an individual's age when that individual is 40 years of age or older.

In order for the Plaintiff to prevail on his claim against the Defendants under the Age Discrimination in Employment Act, the Plaintiff must prove the following three elements by a preponderance of the evidence:

First:        That the Plaintiff was forty years of age or older;

Second:        That the Plaintiff was discharged by the Defendants; and

Third:        That the Defendants would not have discharged the Plaintiff but-for plaintiff's age.

There is no dispute that Mr. Weber was age 60 when his employment was terminated by Defendants.  The First and Second elements have thus been met. To satisfy the Third element, it is not necessary for the Plaintiff to prove that age was the sole or exclusive reason for the Defendant's decision. It is sufficient if the Plaintiff proves that age was a determining consideration that made a difference in the Defendant's decision.  To summarize, it is the burden of the Plaintiff to prove to your satisfaction by a preponderance of the evidence that the Defendant discriminated against the Plaintiff because of the Plaintiff's age.

*Gross v. FBL Financial Services, Inc.,* 129 S.Ct. 2343 (2009)

6. **DIRECT EVIDENCE OF DISCRIMINATION**

Direct evidence of discrimination is that which is tied to an individual's protected characteristics, in this case, Mr. Weber's race, national origin, ethnicity/ancestry and/or age thus suggesting that one or more of those characteristics motivated Defendants' challenged actions, for example, documents or statements of a person involved in the decisionmaking process that reflect consideration of or animus towards the protected characteristics.

The Plaintiff's evidence of such consideration or animus is not limited to that directed at him specifically but can also include behavior or comments directed at others with the same protected characteristics.   Once consideration of or animus towards any of the protected characteristics has been shown, in order to prevail, a defendant must prove by a preponderance of the evidence that they would have made the same decision even without the wrongful considerations.

*Ames v. Cartier, Inc.,* 193 F.Supp. 2d 762 (S.D.N.Y. 2002)
*Raskin v. Wyatt,* 125 F.3d 55 (2d Cir. 1997)
*Barbano v. Matteson County,* 922 F.2d 139 (2d Cir. 1990)

7.     **<u>INDIRECT PROOF OF DISCRIMINATION</u>**

Indirect or circumstantial evidence of illegal discrimination includes proof of a set of circumstances that allow you, the jury, to reasonably believe that any of the protected characteristics I have mentioned was a factor that made a difference in Defendants' treatment of John Weber.  Relying upon circumstantial evidence as proof of discrimination is just as reliable as direct evidence in order to prove discrimination by a preponderance of the evidence.

If you find that Mr. Weber has not provided direct evidence of discrimination to support his claims under Title VII or CFEPA or, in order to find in his favor under the Age Discrimination In Employment Act, you should consider whether the following has been established by the evidence:

1)     That Mr. Weber has characteristics protected under Title VII, CFEPA and under the Age Discrimination in Employment Act.  There is no dispute that this element has been proven in this case in that Mr. Weber is White, of American national origin with American mixed European ethnicity/ancestry.  He is not Asian or of Japanese national origin or ancestry/ethnicity.   His age was 60 when his employment was terminated;

2)     That Mr. Weber suffered an adverse job action(s).  There is no dispute that Mr. Weber suffered an adverse job action in that he was terminated from his employment;

3)     That Mr. Weber was qualified for his position; and

4)      That the decision to terminate Mr. Weber was made under circumstances giving rise to an inference or a suggestion that one or more of his protected characteristics played a role in the decision.  In this case, Mr. Weber claims that he was replaced by a younger Asian executive of Japanese national origin and ancestry and that he was treated differently, or unequally, from his Japanese counterparts.   A showing of disparate treatment, that is a showing that the Defendant treated Mr. Weber less favorably than similarly situated Japanese executives, is a recognized method of raising an inference of discrimination.

If you find these facts to be established by the evidence, then you must consider any legitimate, nondiscriminatory reason or explanation stated by the Defendants for their decisions. A legitimate nondiscriminatory reason is any reason or explanation unrelated to Mr. Weber's protected characteristics.

Once you have considered the non-discriminatory explanation offered by Defendants for terminating Mr. Weber's employment in the manner it did, Mr. Weber may prevail if he shows by a preponderance of evidence that Defendants' explanations are not believable or not the true reason for their conduct.  This is also known as pretext.

In judging whether the reasons any Defendant has given for its actions are pretextual, that is false or not worthy of belief, you may consider whether there is evidence of other discriminatory reasons for the decisions or differential treatment, inconsistency or implausibility in connection with the handling of Mr. Weber's termination in the manner it was, whether

13

Defendants treated Mr. Weber differently from its Japanese and/or younger executives in carrying out the termination of his employment and whether Mr. Weber was replaced by person or persons without his protected characteristics.

If you find that Defendants' explanations for terminating Mr. Weber's employment in the manner they did are not worthy of belief or not the true reasons, in other words a pretext, then you are entitled to infer that Defendants had a discriminatory motive and you may find for Mr. Weber for this reason alone, although you are not required to do so.  Proof that the Defendants' explanation is unworthy of belief is simply one form of circumstantial evidence that is probative of intentional discrimination, however, it may be quite persuasive.

*Mandell v. County of Suffolk,* 316 F.3d 268, 380 (2d Cir. 2003)
*St. Mary's Honor Center v. Hicks,* 113 S.Ct. 2742, 2746-47 (1993)
*Texas Dept. of Community Affairs v. Burdine,* 450 U.S. 248, 252-53 (1981)
*McDonnell-Douglas Corp. v. Green,* 411 U.S. 792, (1973)
*Cabrera v. Jakabovitz,* 24 F.3d 372, 381 (2d Cir. 1994), *cert. denied*, 513 U.S. 876 (1994)
*Cronin v. Aetna Life Insurance Company,* 46 F.3d 196 (1995)
*Gallo v. Prudential Residential Services,* 22 F.3d 1219, 1224 (2d Cir. 1994)
*Brown v. Boston University,* 891 F.2d 337, 347 (1st Cir. 1989)
*Zahorik v. Cornell University,* 729 F.2d 85 (2d Cir. 1984)
*Reeves v. Sanderson Plumbing Products, Inc.,* 530 U.S. 133, 147 (2000)

8.     **FINDINGS   APPLICABLE   TO   BOTH   FEDERAL   AND   STATE DISCRIMINATION CLAIMS**

If you find for Mr. Weber on any of his federal claims of discrimination, you must also find for him on his corresponding CFEPA claims.  If you do not find for Mr. Weber on his Age Discrimination In Employment Act claim, you may still consider whether he has made out an age discrimination claim under the CFEPA, that is, whether Mr. Weber's age was a motivating factor in Defendants' actions.

9.      **BREACH OF EMPLOYMENT CONTRACT**

In Connecticut, the elements of a breach of contract action are:

(1)      The formation of an agreement;

(2)      Performance by one party,

(3)      Breach of the agreement by the other party; and

(4)      Damages

As to the first element, there is no issue as to Mr. Weber's employment by Defendant FMSU under the employment agreement that has been admitted into evidence.  As to the second element, there is also no issue as to the fact that Mr. Weber was performing under his employment agreement up to the time when FMSU terminated his employment.  The issue for your consideration is whether Defendant breached the agreement by classifying Mr. Weber's discharge as having been for "cause" under the agreement and refusing to pay him his full base salary and any and all benefits at the rate then in effect for a period of one year following the termination as required by the agreement.  The agreement defines "cause" as willful malfeasance which would tend to have a material adverse effect on the Company.  Willful means knowing or intentional not just careless and a material adverse effect is one which makes a material financial impact.

If you find that Mr. weber was not terminated for "cause" as defined in his employment agreement and/or that FMSU otherwise breach the implied covenant of good faith and fair

dealing contained in that agreement, Mr. weber would be entitled to receive what you find to be the value of the one year of compensation and benefits provided for therein.

## 10.   **BREACH OF IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING**

In addition, every contract carries an implied covenant of good faith and fair dealing requiring that neither party do anything to injure the right of the other to receive the benefits of the agreement.

To constitute a breach of the implied covenant good faith and fair dealing, any acts taken to impede Mr. Weber's right to receive the benefits that he reasonably expected to receive under the contract must have been taken in bad faith.

Bad faith means more than mere negligence; it involves a dishonest purpose.  Bad faith can constitute a design to mislead or deceive another, or a neglect or refusal to fulfill some duty or some contractual obligation, not prompted by an honest mistake as to one's rights or duties, but by some interested or sinister motive.

If you find that Defendants breached their covenant of good faith and fair dealing and acted in bad faith and impeded his right to receive the benefits he expected to receive under his employment agreement, you must also find in his favor.

*Gupta v. New Britian Gen. Hosp.*, 239 Conn. 574, 598 (1996)
*Bross v. Hillside Acres, Inc.*, 92 Conn. App. 773, 780 (2006) (citation omitted).
*De La Concha of Hartford, Inc. v. Aetna Life Ins. Co.*, 269 Conn. 424, 433 (2004)

**11.**   **TORTIOUS INTERFERENCE WITH CONTRACT**

To recover for tortious interference with contract, a plaintiff must prove the following elements by a preponderance of the evidence:

(1)   The existence of a contractual or beneficial relationship;

(2)   The defendants' knowledge of that relationship;

(3)   The defendants' intent to interfere with that relationship;

(4)   That the defendants' interference was tortious; and

(5)   That the plaintiff suffered damages as a result of the Defendants' conduct.

In this case, it has been established that Mr. Weber had an employment contract with Defendant FMSU of which HLUS and FUJIFILM Corporation were aware.  If you find that HLUS and/or FUJIFILM Corporation intended to and did interfere with that agreement, you should then consider whether the interference was tortious.  Interference is tortious if fraud, misrepresentation, intimidation or molestation are involved or if it can be shown that the defendant or defendants acted maliciously.

If you find that Mr. Weber proved each element of the claim and that Defendants tortiously interfered with his employment contract, you may award him whatever damages he sustained as a result, that is, whatever contractual benefits he was deprived of due to the unlawful interference.

*Appelton v. Board of Education*, 254 Conn. 205, 212-13 (2000)
*Collum v. Chapin*, 40 Conn. App. 449, 452 (1996)

*Hi-Ho Tower, Inc. v. Com-Tronics, Inc.*, 255 Conn. 20, 27 (2000)
*American Diamond Exchange, Inc. v. Alpert*, 101 Conn. App. 83, 97 (2007) cert denied 284 Conn. 901 (2007)
*Energy Solutions, Inc. v. Realgy, L.L.C.*, 114 Conn. App. 262, 272 (2001)

**12.**   **TORTIOUS INTERFERENCE WITH BUSINESS EXPECTANCY**

To establish a claim for tortious interference with business expectancy, a plaintiff must prove the following elements by a preponderance of the evidence:

(1)   He had a business relationship with another party;

(2)   Defendants' knowledge of that relationship;

(3)   Defendants' intent to interfere with that relationship;

(4)   That the interference was tortious; and

(5)   That the plaintiff was damaged as a result.

In this case, it has been established that Mr. Weber had an employment relationship with Defendant FMSU of which HLUS and FUJIFILM Corporation were aware.  If you find that HLUS and/or FUJIFILM Corporation intended to and did interfere with that relationship, you should then consider whether the interference was tortious.  Interference is tortious if fraud, misrepresentation, intimidation or molestation are involved or if it can be shown that the defendant or defendants acted maliciously.

If you find that Mr. Weber proved each element of the claim and that Defendants tortiously interfered with his employment relationship, you may award him whatever damages he sustained as a result, that is, whatever compensation and benefits you find he was deprived of due to the unlawful interference.

*Hi-Ho Tower, Inc. v. Com-Tronics, Inc.*, 255 Conn. 20, 27 (2000)
*American Diamond Exchange, Inc. v. Alpert*, 101 Conn. App. 83, 97 (2007) cert denied 284 Conn. 901 (2007)

*Energy Solutions, Inc. v. Realgy, L.L.C.*, 114 Conn. App. 262, 272 (2001)

### 13.   **DEFAMATION PER SE**

Defamation *per se* is established if a plaintiff shows by a preponderance of the evidence that the defendant made a false statement about him charging him with improper conduct or lack of skill or integrity in his profession or business and that the statement was calculated to cause injury to the individual in his business or profession.   A defamatory statement is defined as communication that tends to harm the reputation of another as to lower him in the estimation of the community or to deter third persons from associating or dealing with him.   In an employment situation, the employer has a qualified privilege to comment upon the job performance of employees so long as it does not act in bad faith or with malice.   Bad faith or malice includes publication of a false statement with actual knowledge of its falsity or reckless disregard of whether it is true or not or the publication of a false statement with bad faith or improper motive. For example, if you were to find that FMSU and HLUS, through Mr. Tada and Mr. File, falsely claimed that Mr. Weber had been terminated for cause in an attempt to hide discrimination in his termination or to coerce him to waive his legal claims or to justify FMSU's refusal to pay him the severance provided for in his employment agreement, the privilege would not apply and Mr. Weber would be entitled to recover for defamation *per se*.

Mr. Weber need not prove that his reputation was damaged for such damage is presumed if defamation *per se* is proved..   However, as I will explain later, if you find that he has proven damages as a result of the defamation, you may award compensation for that and any effect it



had on his career overall as well as for any emotional distress, pain and suffering that you find he

sustained as a result.

*Gambardella v. Apple Health Care,* 291 Conn. 620 (2009)
*Cweklinsky v. Mobil Chemical Co.*, 267 Conn. 210, 217 (2004)
*Gagnon v. Housatonic Valley Tourism Dist. Com'n*, 92 Conn. App. 835, 847-48 (2006)
*Miles v. Perry*, 11 Conn. App. 584, 601 (1987)
*Wolinsky v. Standard Oil of Connecticut, Inc.*, 712 F. Supp.2d 46 (D. Conn. 2010)

14.   **ADVERSE INFERENCE**

Once a party reasonably anticipates litigation, it must suspend its routine document destruction policy and put in place a "litigation hold" to ensure that relevant documents are preserved.

The Plaintiff in this case claims that the Defendants reasonably anticipated litigation starting in or around July of 2009.   Plaintiff claims that the Defendants failed to properly preserve their corporate data for a period covering July 2009 through September 2010 by intentionally implementing a litigation hold over a year later than they reasonably should have, in late September of 2010, resulting in the loss or destruction of evidence relevant to this case. The Plaintiff also claims that he requested information from the laptop of Defendant Hiroaki Tada, but was informed without explanation, that the laptop was corrupted.

You have heard that the Defendant FUJIFILM Corporation failed to produce information contained on its backup tapes covering July 2009 through September 2010 and that documents on Defendant Tada's laptop were also inaccessible.  Plaintiff has argued that this evidence was in the Defendants' control and would have proven facts material to the matter in controversy.

If you find that the Defendant should have produced this evidence which was in its control, and that the evidence was material in deciding facts in dispute in this case, you may infer that the evidence would have been damaging to the Defendants.  Any inference you decide to draw should be based on all of the facts and circumstances in this case.

Sources:

*Zubulake v. UBS Warburg, LLC*, 229 F.R.D. 422 (S.D.N.Y. 2004)
*Residential Funding Corp. v. DeGeorge Financial Corp.,* 306 F.3d 99 (2d Cir. 2002)
*Pace v. National R.R. Passenger Corp.,* 291 F.Supp.2d 93 (2003)
Wright, Miller, Marcus, Federal Practice and Procedure § 5178

15. **DAMAGES**

Now, if you have found that plaintiff has proven his claims by a preponderance of the evidence, then you may consider what damages, if any, are due to him, the injured party. The fact that I give you instructions on damages should not be taken as an indication that I think that damages should be, or should not be, awarded. That is a determination which is left entirely to you. I am instructing you on principles governing damages awards so that, in the event you should find defendant liable, you will know on what basis to consider any award of damages.

A.    **Civil Conspiracy**

This case involves several claims of employment discrimination as well as wrongs under state law also called torts. Some are alleged against only one of the defendants while others are alleged against one or more of them in combination. Mr. Weber has also alleged that each of the Defendants and all of them conspired with each other to engage in the conduct alleged in the various counts for a single purpose, that is to terminate his employment for discriminatory reasons while attempting to make it appear as if there were legitimate reasons for the action, to coerce him into waiving his legal claims and to justify depriving him of the full entitlements of his employment agreement.

In order to succeed on a claim for civil conspiracy, a plaintiff must prove the following by a preponderance of the evidence:

(1)    A combination between two or more persons;

(2)    To do a criminal or an unlawful act or a lawful act by criminal or unlawful means;

(3)     An act done by one or more of the conspirators pursuant to the scheme and in furtherance of the object;

(4)     Which act results in damage to the plaintiff.

If you find that a civil conspiracy has been proven, then each of the members of the conspiracy becomes legally responsible for any wrong committed by any of the co-conspirators and the damages you award for any of those wrongs may be assessed against each of the members of the conspiracy and all of them.

**B.      Compensatory Damages:**

If you find in favor of Mr. Weber on his discrimination or retaliation claims pursuant to Title VII, the ADEA and/or the Connecticut Fair Employment Practices Act, or any of his state law tort claims you may award him compensatory damages.  Compensatory damages represent the sum of money that will fairly, adequately and reasonably compensate a person for harm proximately caused by the conduct of another.

An award of compensatory damages is designed to place the injured party, so far as it can be done by money, in the same position he would have been in had there been no unlawful conduct.   The injured party may recover for those losses which he has proved by a preponderance of the evidence were the direct or natural result of the offending party's conduct. The injured party is entitled to those damages which the offending party should have realized might result from its conduct.

Of course, if different damages are attributed to the separate claims, then you must compensate the plaintiff fully for all of his damages.  If you find that Defendants violated more than one of plaintiff's rights and you can identify separate damages resulting from the separate violations, you should award an amount of damages equal to the total of the damages you believe will fairly and justly compensate plaintiff for the separate damages he has suffered.

In calculating damages, should not consider any lost earnings.  The Court will calculate any back pay or future lost wages and benefits that are due.

You may also award plaintiff compensatory damages for humiliation, emotional pain and suffering, mental anguish, damages to his reputation, and other non-economic injuries caused by Defendants' violations of Title VII, the Age Discrimination In Employment Act, the Connecticut Fair Employment Practices Act and for any or all of Mr. Weber's tort claims.

You may not guess or speculate as to the proper amount of the award of damages, but absolute certainty is not required.  Reasonable certainty is the test.  You must be able, in view of the evidence which is offered, to arrive with a reasonable degree of certainty at some conclusion

as to what Mr. Weber lost.  You are free to consider or not consider the opinions of any expert at trial in making your determination.

     **C.**    **<u>Punitive Damages</u>**

     In addition to compensatory damages, you may award but are not required to award punitive damages on any of Mr. Weber's claims.  Plaintiff requests punitive damages against Defendants for conduct that was allegedly willful, intentional, or with reckless indifference to his rights.

     You may award plaintiff punitive damages only if you find by a preponderance of the evidence that the acts or omissions of Defendants were done maliciously or with reckless indifference to the rights of Mr. Weber.  An act or failure to act is one with reckless indifference if defendant knew or should have known that plaintiff's rights would be violated.

     In making this decision, you should consider the underlying purpose of punitive damages.  Punitive damages are awarded in the jury's discretion to punish a defendant for acting with malice or with reckless indifference to a plaintiff's rights or to deter that defendant and others similarly situated from acting similarly in the future.

**D.**     **Damages Under Age Discrimination in Employment Act**

The Age Discrimination in Employment Act ("ADEA") provides in the event of age discrimination, a defendant shall be liable for certain damages. If a defendant's violation of the Act is willful, then an amount equal to that owing plaintiff for lost wages and benefits is available as liquidated damages. In order for a violation to be considered willful, plaintiff must prove by a preponderance of the evidence that defendant was indifferent to the requirements of the Age Discrimination in Employment Act, and acted in a manner that was purposeful, deliberate or calculated. An employer acts with indifference to the requirements of the Age Discrimination in Employment Act if it acts knowing that its actions violate the law or without concern for its employee's rights under the Age Discrimination in Employment Act, that is, without making any reasonable effort to determine whether its actions violate the law. If you find that defendants acted in reckless disregard of Mr. Weber's rights under the Age Discrimination in Employment Act, then you should find that defendants have engaged in willful conduct. If you find that plaintiff is entitled to any damages, the Court will apply a formula to determine the amount of such damages.

Done at Bridgeport, Connecticut this 30th day of March, 2012.

/s/_____

       Loraine M. Cortese-Costa (ct03984)
       DURANT, NICHOLS, HOUSTON,
       HODGSON & CORTESE-COSTA, P.C.
       1057 Broad Street
       Bridgeport, CT 06604
       Tel. 203-366-3438
       Fax 203-384-0317
       Lcortese-costa@durantnic.com

       ATTORNEYS FOR PLAINTIFF
       JOHN J. WEBER

## **CERTIFICATION**

I hereby certify that I have caused to be served this 30th day of March, 2012, a true and correct copy of the foregoing via electronic mail upon the following counsel and pro se parties of record:

Helen E. Tuttle, Esq.
Meredith R. Murphy
Drinker Biddle & Reath LLP
500 Campus Drive
Florham Park, New Jersey 07932-1047
Helen.Tuttle@dbr.com
Meredith.Murphy@dbr.com

Robert B. Mitchell, Esq.
Margaret M. Sheahan
Mitchell & Sheahan, P.C.
80 Ferry Blvd., Suite 102
Stratford, CT 06615
rbmitchell@mitchellandsheahan.com
msheahan@mitchellandsheahan.com

***For the Defendants***

/s/_____
Loraine M. Cortese-Costa

p:\lit\lcc\907625\003\00092188.docx

33