UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| John J. Weber,<br>          *Plaintiff*, | Civil No. 3:10cv401 (JBA) |
| v. | |
| FujiFilm Medical Systems, U.S.A., *et al.*,<br>          *Defendants*. | June 5, 2012 |

## JURY INSTRUCTIONS

## TABLE OF CONTENTS

Introduction. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

    Role of the Court. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

    Role of the Jury. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

    Role of Attorneys. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

    Burden of Proof—Preponderance of the Evidence. . . . . . . . . . . . . . . . . . . . . . . . . . 7

Evidence. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

    Direct and Circumstantial Evidence. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

    Inference Defined. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

Witnesses. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

    Expert Witnesses. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

Liability Claims. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

    I.  Discrimination Claims. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

        A.  Title VII. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

        B.  Connecticut Fair Employment Practices Act. . . . . . . . . . . . . . . . . . . 18

        C.  The Friendship, Commerce, and Navigation Treaty. . . . . . . . . . . . . 19

        D.  Age Discrimination in Employment Act. . . . . . . . . . . . . . . . . . . . . . 20

        E.  Business Judgment. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

        F.  After–Acquired Evidence. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

    II.  Breach of Contract. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

    III.  Breach of the Implied Covenant of Good Faith and Fair Dealing.. . . . . . . . . 24

    IV.  Defamation. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

    V.  Tortious Interference With Contract. . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

    VI.  Tortious Interference With Business Expectancy. . . . . . . . . . . . . . . . . . . 27

Compensatory Damages.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29

Punitive Damages. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 31

Liquidated Damages. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 33

Conclusion and Final Instructions. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 34

## Introduction

You have now heard all of the evidence in this case.  I will now instruct you concerning the law applicable to the case. After that, you will hear the arguments of counsel and then you will return to the jury room to deliberate in accordance with these instructions.

You must take the law as I give it to you and if any attorney or any witness or exhibit has stated a legal principle different from any that I state to you in my instructions, it is my instructions that you must follow. The instructions as a whole constitute the law of this case. You must follow all of them and not single out some and ignore others; they are all equally important.

Regardless of any opinion you may have as to what the law is or ought to be, it would be a violation of your sworn duty to base a verdict upon any view of the law other than the instructions of the court. It would also be a violation of your sworn duty if you were to base any finding of fact on anything other than the evidence presented to you in this case.

Please be patient and listen closely.  Give careful thought to every issue set forth in these instructions regardless of any general feeling you may have about which party is right. In deciding the facts, you should be guided solely by the evidence presented during trial, without regard to the consequences of your decision. You have been chosen to try the issues of fact and reach an impartial verdict on the basis of the evidence or lack of evidence.

Defendants FMSU, HLUS, and FujiFilm Corporation are corporations, meaning entities created by law.  The fact that Plaintiff is an individual and three of the Defendants are corporations should play no role in your deliberations.  All parties are equal before the law and you must assess the claims and defenses without regard to their status.

**Role of the Court**

As the presiding judge, I perform basically two functions during the trial.  First, I decide what evidence is admissible for your consideration.  You have heard me doing that during the trial.  Second, I instruct you on the law that you are to apply to the facts. I gave you some preliminary instructions before evidence began, but it is now—after the close of evidence—that the full, final instructions are given.

### Role of the Jury

As members of the jury, you are the sole and exclusive judges of the facts. You pass upon the evidence.  You determine the credibility of the witnesses.  You resolve such conflicts as there may be in the testimony.  You draw whatever reasonable inferences you decide to draw from the facts as you have determined them, and you determine the weight of the evidence.

In determining these issues, no one may invade your province or function as jurors. In order for you to determine the facts, you must rely upon your own recollection of the evidence.

It is your duty to find the facts from all the evidence in the case.  To the facts as you find them you must apply the law as I give it to you.  And you must perform your duty as jurors regardless of any personal likes or dislikes, opinions, prejudices, or sympathy you may have because they may interfere with your clear thinking and impair your ability to arrive at a just verdict. In other words, you must decide the case solely on the evidence that has been put before you.

Because you are the sole and exclusive judges of the facts, nothing in the instructions and nothing I have said during the trial reflects any opinion from me as to what your verdict should be. That is a matter entirely up to you.  The rulings I have made during the trial are on legal matters, which are exclusively for the court, not the jury, because they do not constitute evidence.

**Role of Attorneys**

It is the role of the attorneys in our adversarial court system to press as hard as they can for their respective positions. In fulfilling that role, they have not only the right, but the obligation, to make objections to the introduction of evidence they feel is improper.  The application of the rules of evidence is not always clear, and lawyers often disagree.  It has been my job to resolve these disputes.  It is important for you to remember, as I previously instructed you during trial, that my analysis of the merits of objections and rulings on evidentiary disputes have nothing to do with the ultimate merits of the case, and are not to be considered as points scored for one side or the other.

During a trial, one cannot help becoming involved with the personalities and styles of the attorneys, but it is important for you as jurors to recognize that this trial is not a contest between attorneys.   You are to decide this case solely on the basis of the evidence.  Remember, statements and characterizations of the evidence by the attorneys are not evidence.  Insofar as you find their closing arguments helpful, take advantage of them, but it is your memory and your evaluation of the evidence in the case that controls.

6

**Burden of Proof—Preponderance of the Evidence**

Plaintiff John Weber bears the burden of proving each element of his claims by a preponderance of the evidence. The burden of proof in this civil case is different from the burden of proof in criminal cases. In criminal cases, the burden of proof is higher—proof beyond a reasonable doubt. That is not the standard here. The standard here is proof by a preponderance of the evidence, which means proof that something is more likely true than not true. A preponderance of the evidence means the greater weight of the evidence. It refers to the quality and persuasiveness of the evidence admitted, not to the number of witnesses or documents. If one party proves a claim by a preponderance of the evidence, that means the evidence it has presented has more convincing force than the opposing evidence and produces in your minds a belief that what is sought to be proved is more likely true than not true.

It might be helpful to imagine a pair of scales in equal balance. Imagine that, in assessing Plaintiff's claims, you can put his evidence on one side of the scale and Defendants' evidence on the other side of the scale. If the scales tip ever so slightly in favor of Mr. Weber, then his evidence preponderates and he has sustained his burden of proof. If the scales tip the other way, ever so slightly in favor of Defendants, then, obviously, Mr. Weber has not sustained his burden of proof. Should you find that the scales are evenly balanced, that neither side's evidence outweighs the other's such that it is equally probable that either side is right, then Mr. Weber has failed to meet his burden of proving his claims by a preponderance of the evidence, and your verdict will be for Defendants on that claim.

In determining whether a claim has been proved by a preponderance of the evidence, you consider the relevant testimony of all witnesses, regardless of who may have called them, and all the exhibits received in evidence, regardless of who may have offered them.

7

In these instructions I will often say "Plaintiff must prove" to describe what Mr. Weber must do to prevail on a claim.  This means prove by a preponderance of the evidence or by a greater weight of the evidence even though I do not always use those full phrases.

## Evidence

The evidence in this case is the sworn testimony of the witnesses, regardless of who called them, and the exhibits received in evidence, regardless of who produced them. Remember, what the lawyers have said in their questions, or in their objections, or what they may say in their closing arguments, is not evidence. It is the witnesses' answers that are evidence. If a lawyer incorporated into a question a statement which assumed a fact to be true, and asked the witness if that statement was true, you may find that fact to be true only if the witness agreed with the statement.

Arguments or statements or questions by lawyers are not evidence because the lawyers are not witnesses and have no personal knowledge of the facts in this case or whether witnesses were testifying truthfully or not. What they say to you in their closing arguments is intended to help you understand the evidence from their viewpoint in reaching your verdict. However, if your recollection of the facts differs from the lawyers' statements, it is your recollection that controls.

In addition, you should draw no inference from the fact that on occasion I asked or re–phrased questions for witnesses. My questions were only to clarify or expedite matters, not to suggest any opinion as to what your verdict should be. In certain cases, I instructed you that evidence could only be received for a limited purpose; you must follow those instructions. Further, anything you may have seen or heard about this case outside the courtroom is not evidence and must be entirely disregarded. In addition, materials used only to refresh a witness's recollection are not evidence, but if recollection is refreshed from those materials, such testimony is evidence.

Some documents in evidence contain blocked–out sections called redactions.  You are not to concern yourself with or speculate about why these redactions are made.

It is for you alone to decide the weight, if any, to be given to the testimony you have heard and to the exhibits in evidence.

You heard Defendants' attorney reference in a question a lawsuit brought by FMSU against John Weber in New York state court.  This case has been decided in Mr. Weber's favor and you are not to consider the existence and dismissal of that lawsuit as any evidence in this case.

## Direct and Circumstantial Evidence

There are two types of evidence that you may properly use in deciding whether the Plaintiffs have proved their claims.

One type of evidence is called direct evidence. Direct evidence is a witness's testimony as to what he or she saw, heard, or observed.  In other words, when a witness testifies about what is known to him or her by virtue of his or her own senses—what he or she sees, feels, touches, or hears—that is called direct evidence.  An exhibit may be direct evidence as well.

Circumstantial evidence is evidence which tends to prove a disputed fact by proof of other facts.  You infer on the basis of reason and experience and common sense from an established fact whether or not some other fact has been proven.  An inference may be drawn only if it is reasonable and logical, not if it is speculative. Speculation, guesswork, or intuition cannot be substituted for proof.

Circumstantial evidence is of no less value than direct evidence.  As a general rule, the law makes no distinction between the weight and value to be given to either direct or circumstantial evidence, but simply requires that your verdict must be based on a preponderance of all the evidence presented.

11

**Inference Defined**

You will be asked to infer, on the basis of your reason, experience and common sense, from one or more established facts, the existence of some other fact. The word "infer" or the expression "to draw an inference" means to find that a fact exists based on proof of another fact, or is a deduction or conclusion which you, the jury, are permitted to draw—but are not required to draw—from the facts which have been established by either direct or circumstantial evidence. For example, if you see water on the street outside your window, you can infer that it has rained. On the other hand, there may be another reason that water could be on the street, such as the street cleaner just came by. An inference is not a suspicion or a guess. It is a reasoned, logical decision to conclude that a disputed fact exists on the basis of another fact which you know exists.

There are times when different inferences may be drawn from the same facts. Mr. Weber asks you to draw one set of inferences, while Defendants will ask you to draw another. It is for you, and you alone, to decide what inferences you will draw. The process of drawing inferences from facts in evidence is not a matter of guesswork or speculation. You should exercise your common sense, and you may draw such reasonable inferences from the facts as you find to be justified in light of your experience. Whatever inferences you do draw, however, taken together, must prove by a preponderance of the evidence each element of a claim before the opposing party can be liable on that claim.

12

**Witnesses**

You have had an opportunity to observe all of the witnesses.  It is now your job to decide how believable each witness was in his or her testimony and what weight should be given to the testimony.

You are being called upon to resolve various factual issues in the face of the very different pictures painted by the parties.  In making judgments about the testimony of the witnesses you have listened to and observed, you should carefully scrutinize all of the testimony of each witness, the circumstances under which each witness testified, and any other matter in evidence which may help you to decide the truth and the importance of each witness's testimony.

Your decision whether or not to believe a witness may depend on how that witness impressed you. Was the witness candid, frank, and forthright? Or, did the witness seem as if he or she was hiding something, being evasive or suspect in some way?  How did the way the witness testified on direct examination compare with how the witness testified on cross–examination? Was the witness's testimony contradictory? Did the witness appear to know what he or she was talking about and did the witness strike you as someone who was trying to report his or her knowledge accurately?

How much you choose to believe a witness may be influenced by the witness's bias. Does the witness have a relationship with the Plaintiff, or the Defendants, that may have affected how he or she testified?  Does the witness have some incentive, loyalty or motive that might cause him or her to shade the truth; or, does the witness have some bias, prejudice, or hostility toward the Plaintiff, or the Defendants, that may have caused the witness—consciously or not—to give you something other than a completely accurate account of the facts he or she testified to?  Evidence that a witness is biased, prejudiced, or

13

hostile toward the Plaintiff or the Defendants requires you to view that witness's testimony with caution, to weigh it with care, and subject it to close and searching scrutiny. Obviously, the Plaintiff and the Defendants have a particular interest in the outcome of this case, and so you should regard their testimony with care.

Even if the witness was impartial, you should consider whether the witness had an opportunity to observe the facts he or she testified about. You should also consider the witness's ability to express him or herself. Ask yourselves whether the witness's recollection of the facts stands up in light of all other evidence. Inconsistencies or discrepancies in the testimony of a witness, or between the testimony of different witnesses, may or may not cause you to discredit such testimony. Two or more persons witnessing an incident may see or hear it differently; innocent mis-recollection, like failure of recollection, is not an uncommon experience. Moreover, a contradiction may be an innocent lapse of memory or it may be an intentional falsehood. In weighing the effect of a discrepancy, always consider whether it pertains to a matter of importance or an unimportant detail, and whether the discrepancy results from innocent error or intentional falsehood.

If you find that a witness has knowingly testified falsely concerning any matter, you have a right to distrust the testimony of such an individual concerning other matters. You may reject all the testimony of that witness or give it such weight or credibility as you may think it deserves.

You are not required to accept testimony of a witness even though the testimony is uncontradicted and the witness is not impeached. You may decide, because of the witness's bearing and demeanor or because of the inherent improbability of his or her testimony or for other reasons sufficient to you, that such testimony is not worthy of belief. On the other hand, the testimony of a single witness can be sufficient for the proof of any fact, and could

justify a verdict even though another witness may have testified to the contrary.  If, after consideration of all of the evidence in this case, you are more satisfied with the accuracy and reliability of the testimony of the one witness, you may base your finding on his or her testimony.

You must decide what is the most accurate, credible, trustworthy, and reliable evidence.  In deciding credibility, you size a person up in light of his or her demeanor, the information and explanations given, and all the other evidence in the case, just as you would in any important matter where you are trying to decide if a person is truthful, straightforward, and accurate in his or her testimony.  The weight of the evidence as to a particular fact is not necessarily determined by the number of witnesses or exhibits. It is the quality of the evidence that supports a finding as to a particular fact that should control.  In deciding questions of credibility, remember that you should use your common sense, your good judgment, and your experience.

**Expert Witnesses**

In this case, you have heard from three expert witnesses: Dr. Harvey Hammer for Defendants, and Dr. Andrew Levin and Mr. Stanley Wishnick for Mr. Weber.  An expert witness is permitted to testify to an opinion on those matters about which he or she has special knowledge, skill, experience and training.   A lay witness without specialized knowledge is not permitted to give his or her opinions.  Expert testimony is presented to you on the theory that someone who is experienced and knowledgeable in the field can assist you in understanding the evidence or in reaching an independent decision on the facts.   In weighing this opinion testimony, you may consider the witness' qualification, his or her opinions, the reasons for testifying, as well as all of the other considerations that ordinarily apply when you are deciding whether or not to believe a witness' testimony.  You may give the opinion testimony whatever weight, if any, you find it deserves in light of all the evidence in this case.

You should not, however, accept opinion testimony merely because the witness was permitted to testify concerning his or her opinion.  Nor should you substitute it for your own reason, judgment and common sense.  The determination of the facts in this case rests solely with you.

**Liability Claims**

I.      **Discrimination Claims**

     A.      **Title VII**

John Weber claims that the Defendants discriminated against him by firing him on the basis of his American national origin and ancestry in violation of Title VII of the Civil Rights Act of 1964.   To prevail on his Title VII claim, Mr. Weber must prove by a preponderance of the evidence that his American national origin was a motivating factor in the Defendants' decision to terminate him.  Under the law, national origin and ancestry mean the same thing; I will refer to Plaintiff's claim by the shorthand of national origin.   The term "motivating factor" means that Mr. Weber's national origin played a part in the Defendants' decision to fire him; it does not mean that it was the only reason for Defendants' decision to fire him.  If you find that Mr. Weber's American national origin was a motivating factor in the Defendants' decision to fire him, you will indicate your decision on the verdict form.

However, if you find that the Defendants' decision to fire Mr. Weber was motivated by his national origin, but Defendants prove by a preponderance of the evidence that they would have made the same decision to fire Mr. Weber even if his national origin played no role, you will indicate your decision on the verdict form.

If you find that Mr. Weber has proved that his American national origin was a motivating factor in the Defendants' decision to fire him, and that Defendants would not have made the same decision to fire him even if his national origin played no role, you may find he has proved his Title VII claim.  If you find that Mr. Weber's American national origin was not a motivating factor, or that Defendants would have made the same decision even if his national origin played no role, your verdict will be in favor of the Defendants.

17

Defendants claim that they terminated Mr. Weber's employment entirely for legitimate nondiscriminatory reasons. It is Mr. Weber's burden to prove that at least one of the motivating reasons for the decision to fire him was discriminatory. One form of circumstantial evidence that you may consider in deciding whether Mr. Weber has met this burden is evidence that the nondiscriminatory reasons for his firing asserted by Defendants were "pretextual," meaning that they were not the real reasons for the decision to fire Mr. Weber. If Mr. Weber proves by a preponderance of the evidence that the explanations asserted by Defendants for his firing were false, you may infer, but are not required to infer, that Defendants are dissembling to cover up a discriminatory purpose, and that a real reason was that they terminated Mr. Weber because of his national origin.

### B.    Connecticut Fair Employment Practices Act

Mr. Weber also claims that Defendants violated the Connecticut Fair Employment Practices Act by terminating his employment on the basis of American national origin and his age. Relevant to this case, this state law prohibits employers from discharging any employee on the basis of that employee's age or national origin. To prevail on this claim, Mr. Weber must prove that his national origin and/or age was a motivating factor for Defendants' decision to terminate his employment. "A motivating factor" is defined here as I previously defined that term with respect to Mr. Weber's Title VII claim; it is a factor that made a difference in Defendants' decision.

As with Mr. Weber's Title VII claim, to prove his claims under the Connecticut Fair Employment Practices Act, he does not have to prove that his national origin or age were the sole, or even principal reasons for Defendants' decision, only that either or both were a motivating factor. He may prove intentional discrimination directly by proving that a

18

discriminatory reason made a difference in Defendants' decision to fire him, or indirectly proving that the reasons given by Defendants for the firing are unworthy of belief, or pretextual.  If you find that Defendants' stated reasons for the firing are pretextual, then you may infer, but you are not required to infer, that national origin and/or age were motivating factors in the Defendants' decision.

C.       **The Friendship, Commerce, and Navigation Treaty**

I had previously instructed you that there is a treaty called the Friendship, Commerce, and Navigation Treaty, or "FCN Treaty," between the United States and Japan, which permits Japanese corporations doing business in the United States to choose Japanese citizens to manage their operations, and American corporations doing business in Japan to choose American citizens to manage their operations.  Although the FCN Treaty allows these corporations to make such decisions based on citizenship, it does not permit discrimination on the basis of national origin or age that is unrelated to and different from citizenship.

Evidence that you conclude shows that Mr. Weber was replaced at FMSU because of FujiFilm Corporation's preference to have Japanese citizens manage its FMSU operations is therefore not evidence of discrimination.  Evidence that you find shows that Mr. Weber's American national origin was a motivating factor in his termination, however, is proof of unlawful discrimination.  National origin refers to a person's, or his or her ancestor's, place of origin, and/or the common ancestral group with whom he or she shares physical or cultural characteristics.  Citizenship refers to a person who, by either birth or naturalization, is a member of a political community, owing allegiance to the community and being entitled to enjoy all its civil rights and protections.  As I previously instructed you, if you find that Mr. Weber has proven by a preponderance of the evidence that his national origin, as

distinguished from his citizenship, was a motivating factor in Defendants' decision to terminate him, and that Defendants have not proven that they would have made the same decision if his national origin played no role, Mr. Weber will have prevailed on his Title VII and CFEPA claims with respect to national origin discrimination.

D.     Age Discrimination in Employment Act

Mr. Weber claims that Defendants unlawfully terminated his employment on the basis of his age in violation of the Age Discrimination in Employment Act.  Under this Act, it is unlawful for an employer to make an employment decision on the basis of an employee's age when that employee is 40 years of age or older.  To prevail on this claim, Mr. Weber must prove by a preponderance of the evidence:

1) that Defendants terminated his employment;

2) that at the time of termination, he was at least 40 years old; and

3) that his age was the critical factor in the Defendants' decision to fire him.

The requirement that Mr. Weber's age be "the critical factor" is different from the proof requirement for Mr. Weber's Title VII claim that his national origin be "a motivating factor."  To prove that his age was the critical, or decisive, factor in the Defendants' decision to fire him, Mr. Weber must show that but for his age, the Defendants would not have decided to fire him.

Mr. Weber can meet his burden of showing that his age was the critical factor in Defendants' decision to fire him by proving by a preponderance of the evidence that the nondiscriminatory reasons for his firing claimed by Defendants were untrue and pretextual, and that discrimination on the basis of his age was the real reason.  Again, if you do not

believe Defendants' explanations for their actions, then you may infer, but you do not need to infer, that the real reason was discrimination against Mr. Weber because of his age.

### E.      Business Judgment

The law prohibits discrimination, however it is not unlawful for an employer to take adverse employment action against an employee when its actions are based on legitimate factors, whether or not you agree with the decision.  An employer has the right to make decisions concerning an employee based on good reasons, bad reasons, or no reason at all, so long as the employer's reason is not one that is prohibited by law.  Defendants' reasons for terminating Mr. Weber do not have to be reasons of which you approve, and you are not to substitute your judgment for that of the Defendants in making employment decisions, unless you find that those reasons and decisions were discriminatory.

### F.      After–Acquired Evidence

You heard evidence during trial of alleged actions by Mr. Weber, which Defendants claim they were not aware of at the time they made the decision to terminate Mr. Weber's employment, also known as "after–acquired evidence."  As I have previously instructed you, if Defendants were not aware of this evidence at the time they fired Mr. Weber, they could not have been motivated by it in reaching their decision to fire Mr. Weber and you may not consider it as having any bearing on Defendants' intent or motivations in making that termination decision.  You may not consider it as evidence relevant to Mr. Weber's discrimination claims, nor may you consider it as evidence of whether Defendants would have fired Mr. Weber if and when they learned of this evidence.

**II.    Breach of Contract**

Mr. Weber claims that Defendant FMSU breached his employment agreement by classifying his discharge as "for cause" under the contract and refusing to pay him the salary and benefits he was owed upon termination as required by the contract.  To prevail on this claim, he must prove by a preponderance of the evidence the following four elements:

      1) that he entered into an employment contract with FMSU;

      2) that he performed his obligations under that contract;

      3) that FMSU breached the agreement; and

      4) that he suffered damages as a direct result of FMSU's breach.

To successfully prove the third element, that FMSU breached the agreement, Mr. Weber must show that the basis given for his termination did not satisfy the "for cause" standard intended by the parties in the employment contract.  The first place to look to find the parties' intent is the wording that was used in the contract.  Words in a contract are to be given their ordinary meaning, unless they are special terms of trade or the parties have given them special meaning.  Mr. Weber's employment contract defines "cause" as "willful malfeasance which would tend to have a material adverse effect on the interests of the company."  Willful malfeasance is deliberate or reckless misbehavior.

FMSU asserts as a defense to Mr. Weber's breach of contract claim that Mr. Weber himself materially breached his employment agreement prior to his termination, unbeknownst to FMSU.  If a party to a contract materially breaches that contract, that party is barred from enforcing the terms of the contract.  Here, Defendants argue that Mr. Weber materially breached his contract by performing in such a way so as to provide cause for his termination, i.e. he committed "willful malfeasance which would tend to have a material adverse effect on the interests of the company," when he approved the letter to Louise

Collins' landlord, took no corrective action knowing of Larry Hart's actions with respect to the profit sharing plan, and/or directed profit sharing accruals.  If Defendant FMSU proves by a preponderance of the evidence that, unbeknownst to FMSU at the time, Mr. Weber breached his contract prior to being fired, then Mr. Weber cannot enforce his contract against FMSU and cannot recover any damages for breach of contract.

In order to succeed on this defense, FMSU must show that Mr. Weber materially breached his contract through any of these actions, and that FMSU did not become aware until after it terminated Mr. Weber's employment.  You may consider any conduct of Mr. Weber's of which FMSU was aware prior to his termination in evaluating whether FMSU's "cause" assessment was legitimate and accurate if FMSU relied on that conduct in deciding to fire Mr. Weber, but you may not consider conduct of which FMSU was aware in evaluating this defense.  Therefore, the evidence that you may consider in evaluating this defense is only the after–acquired evidence that FMSU asserts concerns Mr. Weber's alleged misconduct.  You may not consider this after–acquired evidence in determining Defendants' motivations in firing Mr. Weber or whether they fired Mr. Weber "for cause"; you may only consider it for the purpose of deciding whether Mr. Weber breached his employment contract before FMSU terminated him.

Such evidence qualifies as "after–acquired" and may be considered in connection with this defense only if you find that FMSU was not aware of the conduct by Mr. Weber prior to his termination.  You may consider FMSU to be aware of Mr. Weber's conduct if it was known by an HLUS or FMSU employee who had authority to approve that conduct.  It has been conclusively determined that FMSU Presidents knew and approved of the payment of salary and benefits to Louise Collins and you are instructed to disregard the evidence of such payments for all purposes in this case.  You are further instructed that Mr.

Weber's actions regarding the interest free loans and the Auric/Ostrowsky relationship were known to FMSU and are therefore not after–acquired evidence which could support Defendants' claim that Mr. Weber breached his contract first.

### III.      Breach of the Implied Covenant of Good Faith and Fair Dealing

Mr. Weber also claims that Defendant FMSU breached the implied covenant of good faith and fair dealing.  Under Connecticut law, every contract carries an implied covenant of good faith and fair dealing, requiring that neither party do anything that will injure the right of the other to receive the benefits of the agreement.  To prevail on this claim, Mr. Weber must prove by a preponderance of the evidence that FMSU took actions in bad faith that impeded Mr. Weber's right to receive benefits that he reasonably expected to receive under the contract.  Bad faith requires a dishonest purpose; it is more than mere negligence.  In general, bad faith implies both actual or constructive fraud, or a design to mislead or deceive another, or a neglect or refusal to fulfill some duty or contractual obligation, not prompted by an honest mistake, but by some interested or sinister motive.

### IV.      Defamation

Mr. Weber claims that he was defamed by FMSU, HLUS, and Mr. Tada's statements that he was fired from FMSU "for cause."   To prevail on this claim, Mr. Weber must prove by a preponderance of the evidence the following three elements:

> 1) that Defendants published a defamatory statement to a third person;
>
> 2) that the defamatory statement identified Mr. Weber to a third person; and
>
> 3) that Mr. Weber's reputation suffered injury as a result of the statement.

24

A defamatory statement is a false communication that tends to harm the reputation of another; to diminish the esteem, respect, goodwill, or confidence in which the Plaintiff is held; to deter third persons from associating or dealing with him; or to excite adverse derogatory, or unpleasant feelings or opinions against him.  Publication means to make a statement to another orally, in writing, or by some other means of communication.

Defendants have raised two defenses in response to Mr. Weber's defamation claim: truth and the intracorporate privilege.  With respect to Defendants' truth defense, Mr. Weber cannot succeed on his defamation claim if the statements that he was fired "for cause" was, in fact true, that is that Defendants' claim of "cause" was truthful.  Defendants have the burden of proving that the statements that Mr. Weber was fired "for cause" were true; Mr. Weber does not have the burden of proving that the statements were false.  If Defendants prove by a preponderance of the evidence that the statements that Mr. Weber was fired "for cause" were substantially true at the time they were made, meaning that the main charge or "gist" of the statements that they had cause to fire him were true at the time they were made, then your verdict should be for these three Defendants.

With respect to these Defendants' second defense, the intracorporate privilege protects communications between managers regarding the review of an employee's job performance and the preparation of documents regarding an employee's termination.  In order to meet their burden with respect this privilege, Defendants must show by a preponderance of the evidence that the statements that Mr. Weber was fired "for cause" were made only among supervisors, managers, officers, or persons advising corporate officers or executives at FMSU and/or HLUS in the context of making an employment decision with respect to Mr. Weber.  Even if Defendants meet this burden, however, they lose the protection of the privilege if you find that they acted maliciously in making the statements.

Malice is defined at any improper or unjustifiable motive, including, but not limited to, ill will, spite, or merely making a statement with knowledge that it is false or with reckless disregard of whether it is false or not.

### V.      Tortious Interference With Contract

Mr. Weber claims that Defendants HLUS and FujiFilm Corporation tortiously interfered with his contract with FMSU.  To prevail on this claim, Mr. Weber must prove by a preponderance of the evidence:

     1) that he had a contract with FMSU;

     2) that Defendants HLUS and FujiFilm Corporation knew of that contract;

     3) that Defendants HLUS and FujiFilm Corporation intentionally and wrongfully
              interfered with that contract; and

     4) that Mr. Weber suffered an actual loss as a result of the interference.

Wrongful interference means actions that constitute fraud, misrepresentation, intimidation or malicious conduct.  Malicious conduct here is the intentional doing of a wrongful act without just cause or excuse with an intent to inflict injury or implied evil intent.

### VI.      Tortious Interference With Business Expectancy

Mr. Weber also claims that Defendants HLUS and FujiFilm Corporation tortiously interfered with his business expectancy with FMSU.  To prevail on this claim, Mr. Weber must prove by a preponderance of the evidence:

     1) that he had a business relationship with FMSU;

2)  that Defendants HLUS and FujiFilm Corporation knew of the business relationship;

3) that Defendants HLUS and FujiFilm Corporation intentionally and wrongfully interfered with the business relationship; and

4) that Mr. Weber suffered an actual loss as a result of the interference.

Again, wrongful interference means actions that constitute fraud, misrepresentation, intimidation or malicious conduct.

**Compensatory Damages**

I will now instruct you on the issue of compensatory damages.  The fact that I am instructing you concerning damages should not be considered as indicating any view by the Court as to whether Defendants are liable on any claim. These instructions on damages are for your guidance if you find in favor of Mr. Weber against any Defendant or Defendants, separately or collectively, on any or all of his claims, except the breach of contract and the implied covenant of good faith and fair dealing claims, which I will describe shortly.  If you find that Mr. Weber has proved that Defendants are liable, then you must decide how much, if any, in money damages to award for injuries caused by the unlawful conduct you found proved.  You will not be asked to differentiate among the Defendants for this purpose.

You should award damages only for those injuries that you find Plaintiff has proven by a preponderance of the evidence to have been a proximate result of conduct by Defendants. You should apply sound judgment and common sense in reaching the proper amount of damages.  It is Mr. Weber's burden to prove by a preponderance of the evidence each item of damage he claims.

Compensatory damages means the amount of money that will fairly and reasonably compensate the Plaintiff for injuries he proves were proximately caused by Defendants' unlawful conduct. Mr. Weber is not required to prove losses with mathematical precision, but only with as much definiteness and accuracy as circumstances permit. Your determination of compensatory damages is to be what you find to be reasonable in light of the evidence in this case.

With respect to the Title VII, Connecticut Fair Employment Practices Act, defamation, and tortious interference with contract and business expectancy claims, Mr. Weber claims damages for non–economic injuries including humiliation, emotional pain and

28

suffering, mental anguish, and damage to his reputation caused by Defendants' conduct.  In calculating the damages, if any, to which you find Mr. Weber is entitled, you should not consider any lost earnings.  The Court will calculate any back pay or lost wages that are due in a separate proceeding.

With respect to Mr. Weber's breach of contract and breach of the covenant of good faith and fair dealing claims, against FMSU only, any damages to which Mr. Weber may be entitled, if you find FMSU liable on this claim, are measured as of the time of the breach. Under the employment contract, these damages include "full base salary and any and all benefits at the rate then in effect for a period of one year."  If you find that Mr. Weber is entitled to damages on his breach of contract claim, you may also award prejudgment interest from the date such payments were wrongfully withheld to today.

**Punitive Damages**

If you find Defendants liable on Mr. Weber's Title VII claim and award compensatory damages, you will also consider whether Mr. Weber has proved that punitive damages should be awarded against Defendants under the standards I will describe. Punitive damages may be awarded to punish a defendant for extreme or outrageous conduct that harmed the Plaintiff, and to deter or prevent a defendant and others like it from committing such conduct in the future.

You may find Mr. Weber is entitled to punitive damages if you find that the acts or omissions of Defendants were done maliciously or with reckless indifference to Mr. Weber's right not to be discriminated against on the basis of his national origin. To prove that Defendants acted with malice or reckless indifference Mr. Weber must prove by a preponderance of the evidence that Defendants knew that the termination was in violation of law prohibiting discrimination, or acted with reckless disregard of that law, that is with an intention to disregard what they knew was a high probability that their acts were in violation of the law.

However, you may not award punitive damages if you find that Defendants made a good–faith effort to comply with the law prohibiting discrimination. If you find that Defendants acted with malice or reckless disregard and did not make a good–faith effort to comply with the law, then you may, but are not required to, award Mr. Weber punitive damages if you find it is appropriate to punish the Defendants or to deter Defendants and other from similar conduct in the future.

If you award compensatory damages on Mr. Weber's Connecticut Fair Employment Practices Act, breach of contract, breach of the covenant of good faith and fair dealing,

defamation, or tortious interference with contract or business expectancy claims, you may, but are not required to award punitive damages to Mr. Weber.  You may award punitive damages on these Connecticut law claims if you find that Mr. Weber proved by a preponderance of the evidence that Defendants acted willfully, wantonly, maliciously, with a bad motive, or with reckless indifference to the rights of Mr. Weber.  If you decide that punitive damages are warranted on these claims, you will indicate that determination on the verdict form, but you will not be asked to calculate an award because under Connecticut law, the Court will determine the amount of punitive damages for these claims.

**Liquidated Damages**

If you find that Defendants are liable to Mr. Weber on the Age Discrimination in Employment Act claim, you may also consider whether to additionally award Mr. Weber liquidated damages, on top of any economic damages, if you find that Defendants acted willfully in violating this Act. Defendants acted willfully if they deliberately, intentionally, and knowingly took adverse action against Mr. Weber because of his age and if they knew that such conduct was unlawful or showed reckless disregard of whether such conduct was unlawful or not, that is, they knew there was a high probability that the conduct was unlawful but they went ahead anyway. If you decide that liquidated damages should be awarded, you will indicate that determination on the verdict form, but will not be asked to make an award of damages because the Court will make that determination in a later proceeding.

## Conclusion and Final Instructions

I have now concluded the instructions relating to the claim in this case.  In closing, I must add a few more general instructions concerning your deliberations.

You were permitted to take notes during the course of the trial. Any notes you have taken should be used only as memory aids; do not give your notes precedence over your independent recollection of the evidence. If you did not take notes, you should rely on your own recollection of the proceedings and should not be influenced by the notes of other jurors. Your notes are not evidence and should not be shared.

Your verdict must be unanimous and represent the considered judgment of each juror. Each of you must make your own decision, but you must consider impartially all the evidence and the views of your fellow jurors. It is your duty to consult with one another and to deliberate with a view toward reaching an agreement if you can do so consistent with the individual judgment of each juror.  Until a verdict is agreed to by each juror, it is not a unanimous verdict.

In the course of your deliberations, do not hesitate to re–examine your individual view, or to change your opinion, if the deliberations and the views of your fellow jurors convince you yours is erroneous. However, you should not surrender your honest convictions as to the facts as you find them or as to the weight or effect of the evidence solely because of the opinion of your fellow jurors or for the mere purpose of returning a verdict.

Remember at all times you are not partisan, rather you are the judges of the facts and your sole interest is to seek the truth from the evidence in the case.

Upon retiring to the jury room you should first elect one among you to act as your foreperson who will preside over your deliberations and will be your spokesperson here in court. After you have retired to begin your deliberation, you are not to leave your jury room without first notifying the marshal, who will escort you.  No deliberation may take place without all jurors being present.  Again, you are prohibited from seeking information from any source outside the confines of this courtroom. I know that many of you use cell phones, Blackberries, the internet and other tools of technology.  You may not communicate with anyone about the case on your cell phone, through e-mail, Blackberry, phone, text messaging, or on Twitter, through any biog. or website, through any internet chat room, or by way of any other social networking website, including Face book, My Space, Linked in, and Adobe.

You will take the verdict form to the jury room and answer the questions asked. When you have reached unanimous agreement as to your verdict, you will have your foreperson fill in your answers, and date and sign the verdict form. Then inform the marshal that you have reached a verdict.

You are about to go into the jury room to begin your deliberations.  You will have exhibits with you.  If you want any of the testimony read, you must request that. Please remember that it is not always easy to locate what you might want, so be as specific as possible in your request. Your requests for testimony and, in fact, any communication with the court should be made to me in writing, signed by your foreperson, and given to one of the marshals.  I will respond to your request as promptly as possible either in writing or by having you return to the courtroom so that I can address you orally.

I must also caution you that in your communications with the court you should never specify your numerical division at any time.

34

It is proper to add a final caution.  Nothing that I have said in these instructions—and nothing that I have said or done in any ruling, action, or remark during the trial—has been said or done to give you any opinion or suggestion as to what your verdict should be. What the verdict shall be is your exclusive duty and responsibility.

Thank you very much for the time and energy you have devoted to this case.  Without you, justice cannot be done in this case.