UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| JOHN J. WEBER,<br>　　　*Plaintiff*,<br>　　v.<br>FUJIFILM MEDICAL SYSTEMS U.S.A., INC., *et al.*,<br>　　　*Defendants*. | Civil No. 3: 10cv401 (JBA)<br><br>December 16, 2013 |

**RULING ON PENDING MOTIONS**

Following a jury trial, the jury returned a verdict finding Defendant FujiFilm Medical Systems U.S.A., Inc. ("FMSU") liable on Plaintiff John Weber's claimed breach of contract and breach of implied covenant of good faith and fair dealing, and finding Defendants FujiFilm Holdings America Corporation ("HLUS") and FujiFilm Corporation liable on Mr. Weber's claimed tortious interference with business contract and tortious interference with business expectancy. The jury found no liability on Mr. Weber's Title VII national origin discrimination claim, Connecticut Fair Employment Practices Act ("CFEPA") national origin and age discrimination claims, Age Discrimination in Employment Act ("ADEA") claim, and defamation claim. The jury awarded $150,000 in compensatory damages for non-economic injuries caused by Defendants' conduct, and $567,357 plus prejudgment interest for economic injuries caused by FMSU's breach of contract.

Plaintiff and Defendants filed a variety of post-trial motions regarding the validity of these findings. In a ruling on the parties' post-trial motions, the Court upheld the jury verdict and damages award and granted pre-judgment interest at a simple annual rate of four percent from January 1, 2010 to June 15, 2012. (*See* Ruling on Post-Trial Motions ("Ruling") [Doc. # 518] at 35, 39.) The Court also granted Plaintiff's motion for the

assessment of lost wages on his tortious inference claims (*see id.* at 33), and directed the parties to file supplemental briefing on "the amount of lost wages, if any" to be assessed on those claims (Scheduling Order [Doc. # 521]).  In accordance with the Court's order, Plaintiff now moves [Doc. # 523] for the assessment of lost wages.  Plaintiff also moves to correct the judgment in light of a clerical error [Doc. # 519], for prejudgment remedy against Defendants [Doc. # 528], and for disclosure of assets by Defendants [Doc. # 529]. For the following reasons, Plaintiff's motions to correct and for prejudgment remedy are granted, and Plaintiff's remaining motions are denied.

## I.    Motion to Correct [Doc. # 519]

Plaintiff moves pursuant to Federal Rule of Civil Procedure 60(a) to correct the Court's award of prejudgment interest in the Court's Ruling on the post-trial motions and in the Amended Judgment [Doc. # 517].  Rule 60(a) provides that a "court may correct a clerical mistake or a mistake arising from oversight or omission whenever one is found in a judgment, order, or other part of the record."  "[A] Rule 60(a) motion is appropriate where the judgment has failed accurately to reflect the actual decision of the decision maker to award [prejudgment] interest." *Robert Lewis Rosen Associates, Ltd. v. Webb*, 473 F.3d 498, 504 (2d Cir. 2007) (internal citations and quotation marks omitted).

In its Ruling, the Court awarded prejudgment interest "at a simple annual rate of four percent from January 1, 2010 . . . to June 15, 2012 . . . for a total award of $32,899.13 in prejudgment interest." (Ruling at 35.)  In his motion to correct, Plaintiff accurately points out that four percent simple interest on Plaintiff's economic damages over that time period results in a total award of $55,592.68, rather than $32,899.13. (*See* Pl.'s Reply

re Mot. to Correct [Doc. # 522] at 2.)[1]  The Court's initial award of $32,899.13 was based

on a computational error and does not accurately reflect the amount of interest the Court

intended to award Plaintiff.  Defendants do not dispute that the Court has the authority

to correct this clerical error pursuant to Rule 60(a).  Rather, for the first time in their

opposition to Plaintiff's motion to correct, Defendants argue that the Court's award of

prejudgment interest should run from June 30, 2010 to June 15, 2012.  Defendants base

this argument on the fact that Plaintiff's employment contract provided for a payout of

salary and benefits "for a period of one year," rather than entitling Plaintiff to one lump

sum payout.  (*See* Defs.' Opp'n re Mot. to Correct [Doc. # 520] at 1–2.)

Defendants failed to raise this argument in the original briefing on Plaintiff's

motions [Doc. ## 478, 479] for assessment of prejudgment interest, and it cannot

properly be raised before this Court for the first time in their opposition to the pending

motion.  *Cf. Packer v. SN Servicing Corp.*, 250 F.R.D. 108, 112 (D. Conn. 2008) ("It is well

settled that a failure to brief an issue is grounds to deem the claim abandoned.").

Defendants should not receive an extra opportunity to raise issues with the Court based

on the fortuity of a clerical error in a previous ruling.  Further, the Court cannot grant the

relief requested by Defendants under Rule 60(a).  The Court intended in its initial Ruling

for the interest award to begin running on January 1, 2010, and thus, changing that date

would represent more than the correction of a clerical error.  Such action would represent

a change to the substantive rights of the parties.  Therefore, in order to correct the Court's

---

[1] In his initial motion, Plaintiff requested an award of $55,789.34 in prejudgment interest.  (*See* Pl.'s Mot. to Correct [Doc. # 518] at 2.)  However, Plaintiff concedes in his reply that this original amount was based on a calculation error and that the correct amount is $55,592.68.  (*See* Pl.'s Reply re Mot. to Correct [Doc. # 522] at 2 n.1.)

clerical error, the Plaintiff's motion to correct is granted, and the Court awards prejudgment interest in the amount of $55,592.68.

## II.   Motion for Assessment of Lost Wages [Doc. # 523][2]

In its Ruling on the post-trial motions the court held that "an award of front pay and back pay may be appropriate in a tortious interference case in the employment context." (*See* Ruling at 32–33). The Court further recognized that:

> The damages . . . that an employee whose employment is terminable at will is entitled [to], if discharged because of interference by another, are those damages that can be reasonably established, taking into account the type and stability of the employment; the past employment record; the employee's age, health, ability to labor; and the probability that they employment would otherwise have continued. The sum that an employee would have earned had such employment continued is prima facie the measure of damages. Where it appears that a discharged employee has lost considerable time without being able to secure work and that this condition will continue for some time in the future, the damages may include loss of employment, not only up to the time of the action, but also future unemployment.

(*See id.* at 32 (quoting 44B Am. Jur. 2d interference § 612).) Based on these factors, Plaintiff moves for the assessment of $6,457,738 in compensatory damages for lost wages on his tortious interference claims. Defendants oppose Plaintiff's motion, arguing that Plaintiff has failed to establish that their tortious conduct was the proximate cause of any economic damage.

"It is axiomatic . . . that in every tort action, the fact finder may award economic damages only if the plaintiff has proven those damages to a reasonable certainty and has shown that the defendant had proximately caused the damages." *Jones v. Kramer*, 267

---

[2] Defendants' move [Doc. # 526] for oral argument on Plaintiff's motion for assessment of lost wages. The Court has determined that oral argument is unnecessary for the resolution of Plaintiff's motion, and therefore Defendants' motion for oral argument is denied.

Conn. 336, 350 n.7 (2004).   Thus, Plaintiff bears the burden of proving by a preponderance of the evidence that Defendants' tortious conduct proximately caused his alleged lost wages damages.   The Court described the nature of Defendants' tortious conduct in its Ruling on the post-trial motions:

> Plaintiff points to evidence from which the jury could conclude that HLUS and FujiFilm Corporation had improperly targeted Plaintiff for termination, and attempted to manufacture "cause" to fire him in order to avoid FMSU's payment obligation under Plaintiff's contract for termination without cause. . . . This is not to suggest that it would be improper for a parent company to direct its subsidiary to fire an employee for economic or performance-related reasons, or to investigate allegations of employee misconduct and perform other "garden-variety personnel actions."   Thus, under similar circumstances, a parent company could properly have directed its subsidiary to fire an employee without cause and without severance.   However, a parent company's actions become wrongful when it directs its subsidiary to falsely designate an employee's termination with the damaging label "for cause" just to avoid the financial obligations to pay severance for a without-cause termination. . . . The evidence at trial was sufficient to permit a jury to infer that Defendants FujiFilm Corporation and HLUS encouraged FMSU to make such an unjustified designation when terminating Plaintiff, forming the basis of their verdicts on tortious interference.

(Ruling at 7, 10–11 (internal citations omitted).)   Defendants argue that Plaintiff must therefore show that his proposed lost wages damages were proximately caused by Defendants' decision to falsely designate Plaintiff's termination as "for cause" in order to recover compensatory damages on his tortious interference claims.

Plaintiff contests Defendants' characterization of his burden, arguing that the Court's Ruling did not limit the grounds for upholding the jury's verdict on the tortious interference counts and thus Plaintiff may recover all lost wages flowing from his termination, whether or not the fact that his termination was "for cause" proximately caused those damages.   However, Plaintiff misinterprets the Court's Ruling.   The Court

considered and rejected Plaintiff's alternative arguments for upholding the jury verdict, and based on a review of the trial record, concluded that the only grounds based on which the jury could have properly found that Defendants conduct constituted tortious interference was their directive that Plaintiff be fired "for cause" where no such cause existed.   The Court was careful to explain in its Ruling that in the absence of a finding of race or age discrimination by the jury, Defendants were within their rights to direct that Plaintiff be fired without cause and without severance.   (*See id.* at 10–11); *see also Boulevard Assocs. v. Sovereign Hotels*, 72 F.3d 1029, 1036 (2d Cir. 1995) ("[A] parent company does not engage in tortious conduct when it directs its wholly-owned subsidiary to breach a contract that is no longer in the subsidiary's economic interest to perform."). However, by directing that the damaging and unwarranted label of "for cause" be applied to Plaintiff's termination, Defendants' actions became tortious.   (*See id.* at 11.)   Apart from this improper means of termination, the Court found no basis in the record to support a finding of improper motive as Plaintiff suggests.   Thus, in order for Plaintiff to recover economic damages, he must show that the "for cause" designation was the proximate cause of his lost wages.[3]

---

[3] Defendants argue preemptively in their opposition that Plaintiff is not entitled to reputational damages in connection with his tortious interference claims.   However, Plaintiff's motion is limited to a discussion of the basis for and amount of *lost wages* that should be awarded.    To the extent that Plaintiff seeks non-economic reputational damages, he has failed to meet his burden to establish the quantum of such damages or that such alleged damages were proximately caused by the "for cause" designation of his termination.   The jury returned a verdict of no liability on Plaintiff's defamation claim, and such a finding militates against the award of reputational damages in connection with Plaintiff's tortious interference claims.   Further, the evidence at trial tended to establish that Defendants did not announce the "for cause" nature of Plaintiff's termination.   A press release announcing Plaintiff's departure from FMSU notes his "24 years of dedicated service," and identifies Plaintiff as a key member of the executive

As Defendants argue, the evidence at trial established that Defendants intended to terminate Plaintiff's employment regardless of whether this termination was for cause. Mr. Tada testified at trial that by July of 2009, before he discovered the Empiric filing which ultimately resulted in Plaintiff's termination being designated as "for cause," he had decided to ask for Plaintiff's resignation as of the end of the year. (*See* Trial Tr. at 1502–03, App'x II to Defs.' Opp'n; *see also* Trial Ex. 42, App'x I to Defs.' Opp'n.) Thus, the ultimate decision to wrongly designate Plaintiff's termination as "for cause" did not proximately cause or accelerate Plaintiff's termination. Because Plaintiff cannot show that by a preponderance of the evidence that he otherwise would have remained employed at FMSU, he has not met his burden to establish that he is entitled to lost wages flowing from his continuing employment at the company.

However, if Plaintiff could show that the designation of his termination as "for cause" proximately caused his inability to find comparable employment, he would still be entitled to lost wages damages. In his reply, Plaintiff cites his testimony that his current employer Regenecin was the only employer to accept his explanation for his termination in support of his argument that his inability to find alternate employment was proximately caused by his "for cause" termination. (*See* Pl.'s Reply [Doc. # 525] at 6.) However, the reply mischaracterizes Plaintiff's testimony. At trial Plaintiff testified as follows: "Well, I took the position with Regenecin primarily because I wasn't able to get a job anywhere else, and I explained the situation here, that I was terminated, and they accepted the explanation and put me on the board of directors." (Trial Tr. at 355.) Plaintiff did not testify that no other employer would accept his explanation for his

---

committee that helped transform FMSU. (*See* Trial Ex. 5A, App'x I to Defs.' Opp'n [Doc. # 524] at 2.)

termination.  Plaintiff's testimony that he believed he was harmed by his "termination" (*see id.* at 354) is speculative and does not specify whether it was the designation of his termination as "for cause" or merely the fact of his termination itself that caused this harm.  Plaintiff also testified that a co-worker and customer asked him whether he had been terminated for cause after learning that he was leaving FMSU.  (*See* Trial Tr. at 190–93, 199–200).[4]  However, there was no evidence at trial that any of Plaintiff's potential future employers knew Plaintiff was terminated "for cause" or that they refused to hire Plaintiff as a result of this "for cause" designation.  Rather, Defendants' press release regarding Plaintiff's departure notes his "24 years of committed service" and the fact that he was "a leading member of the executive committee that transformed FujiFilm."  (Trial Ex. 5A at 2.)

Therefore, Plaintiff has failed to establish by a preponderance of the evidence that Defendants' tortious decision to falsely designate his termination as "for cause" proximately caused his alleged lost wages, and the Court declines to award economic damages in connection with his tortious interference claims.[5]  Plaintiff's motion for the assessment of lost wages is denied.[6]

---

[4] These hearsay statements were admitted only for the limited purpose of showing their effect on Plaintiff and the jury has awarded emotional damages to compensate Plaintiff for the anguish that these inquiries caused.

[5] This finding is not inconsistent with the requirement that a plaintiff must suffer "actual loss" in order to succeed on a tortious interference claim.  "[A]n award of compensatory damages is not necessary to establish a cause of action for tortious interference as long as there is a finding of actual loss."  *Hi-Ho Tower, Inc. v. Com-Tronics, Inc.*, 255 Conn. 20, 34 (2000).  As the Court recognized in its Ruling, "[f]alsely terminating an employee for cause has the potential to damage that individual's reputation and psyche and to limit his or her future employment opportunities and earning potential, thus causing him serious injury."  (Ruling at 11.)  The jury has already compensated Plaintiff for his "actual loss" by awarding $150,000 in non-economic

III.     **Motions for Prejudgment Remedy and for Disclosure of Assets [Doc. ## 528, 529]**

During the pendency of his motion for assessment of lost wages, Plaintiff moved [Doc. # 528] for prejudgment remedy in the amount of $7 million, and [Doc. # 529] for disclosure of assets by Defendants to secure that remedy.   Defendant opposes these motions, arguing that it would be inappropriate to grant a prejudgment remedy at such an advanced stage in the litigation, that there is not probable cause to support a remedy in the amount of $7 million, that they should be permitted to post a supersedeas bond in the amount of the jury verdict in lieu of a prejudgment remedy, and that the Court should award Defendants costs and attorney's fees in connection with their opposition to these motions.

A plaintiff is permitted to utilize state prejudgment remedies to secure a judgment that might ultimately be rendered in a federal action pursuant to Fed. R. Civ. P. 64, which states:

> At the commencement of and during the course of an action, all remedies providing for seizure of person or property for the purpose of securing satisfaction of the judgment ultimately to be entered in the action are available under the circumstances and in the manner provided by the law of the state in which the district court is held, existing at the time the remedy is sought.

---

damages for the emotional trauma he suffered as a result of Defendants' false designation of his termination as "for cause."

[6] Because the Court concludes that Plaintiff failed to show that Defendants' tortious conduct was the proximate cause of his alleged damages, it need not address Plaintiff's arguments (1) that the failure to mitigate defense is not applicable to his claims, (2) that Defendants are collaterally estopped from challenging the damages calculation of Plaintiff's expert, (3) that "after-acquired" evidence cannot be used to limit Plaintiff's recovery, and (4) that Defendants' are jointly and severally liable for the alleged lost wages damages.

Connecticut law provides for the award of a prejudgment remedy at Conn. Gen. Stat. § 52–278a *et seq.*  Section 52–278c sets forth the required documents to be filed with the court and the requirements of service on the defendant of notice of intent to secure a prejudgment remedy.  A prejudgment remedy may be obtained when Plaintiff establishes that there is probable cause to sustain the validity of his claims.  *See* Conn. Gen.Stat. § 52–278d.  Connecticut courts have defined "probable cause" within the meaning of this statute as "a bona fide belief in the existence of the facts essential under the law for the action and such as would warrant a man of ordinary caution, prudence and judgment, under the circumstances, in entertaining it." *Three S. Development Co. v. Santore,* 193 Conn. 174, 175 (1984) (citation omitted).  Generally, a hearing is required before a prejudgment remedy may issue.  *See* Conn. Gen. Stat. § 52-278d.  However, because there has already been a trial and jury verdict on Plaintiff's claims, such a hearing is unnecessary in this case.  *Cf. Bank of Boston Connecticut v. Schlesinger*, 220 Conn. 152, 156 (1991) (noting that the hearing required by the prejudgment remedy "is not contemplated to be a full scale trial on the merits of plaintiff's claims."); *New England Health Care Employees Welfare Fund v. iCare Management, LLC*, 792 F. Supp. 2d 269, 283 (D. Conn. 2011).

Plaintiff argues that there is probable cause to support a prejudgment remedy in the amount of $7 million.  The jury awarded $150,000 in compensatory damages for non-economic injuries caused by Defendants' conduct, and $567,357 for economic injuries caused by FMSU's breach of contract. The Court has also awarded $55,592.68 in prejudgment interest.  Thus, in light of the jury's verdict and this Court's prior rulings, there is probable cause to support a prejudgment remedy in the amount of $772,949.68. Further, pursuant to 28 U.S.C. § 1961, Plaintiff is entitled to post-judgment interest on his

award at the rate of 0.18% compounding annually.  Assuming that it will take, on average, an additional eighteen months to resolve the parties' appeal of this matter, there is probable cause to support a finding that Plaintiff will receive roughly $4,181.44 in post-judgment interest, which would support a total prejudgment remedy of $777,131.12. However, as discussed above, the Court concludes that the evidence at trial was not sufficient to establish that Defendants' tortious conduct was the proximate cause of Plaintiff's claimed lost-wages damages, and the Court awards zero economic damages in connection with Plaintiff's tortious interference claims.  Thus, there is not probable cause to support an award in the full amount of Plaintiff's claimed damages.

Defendant argues that Plaintiff is not entitled to a prejudgment remedy at this late stage in the litigation, where a jury verdict has been rendered and the Court has entered a final judgment.   However, Connecticut courts have recognized that "a prejudgment remedy is available to a party who has prevailed at the trial level and whose case is on appeal."  *Gagne v. Vaccaro*, 80 Conn. App. 436, 454 (2003); *see also id.* at 453 n. 15 (collecting cases).[7]  As the Connecticut Appellate Court has explained:

> The purpose of the [prejudgment remedy] statute is to allow a plaintiff who can show probable cause that he will eventually succeed on the merits to encumber property of the defendant to protect himself from obtaining a judgment which cannot be satisfied. At the same time the statute seeks to protect the defendant from unreasonable encumbrances. It is as necessary to protect a plaintiff who has won at the trial level, when the final disposition of the case awaits appellate proceedings, as it is to protect that same plaintiff before trial. There is no reason to assume that the legislature intended, by using the phrase 'final judgment,' to deprive a plaintiff, who awaits final disposition of the case, of the protection afforded by this statute.

---

[7] In light of this precedent, the Court concludes that Plaintiff's motion for prejudgment remedy was not frivolous and does not merit an award of costs and attorney's fees pursuant to 28 U.S.C. § 1927.

*Id.* at 453 (internal citations and quotation marks omitted).  Thus, the fact that a verdict and judgment has already entered in this case does not render Plaintiff's motion moot.

Defendants argue that they should be permitted to satisfy any prejudgment remedy and to avoid disclosure of their assets by posting a bond. *See Tucker v. Journal Register East*, No. 3:06cv307 (SRU), 2009 WL 426460, at *1 (D. Conn. Feb. 20, 2009) ("The defendant may, if it so chooses, satisfy the prejudgment remedy and avoid disclosure of assets by posting a bond."); Conn. Gen. Stat. § 52-278d(c) ("If an application for a prejudgment remedy is granted and the defendant moves the court for a stay, the court may, if it determines justice so requires, stay such order if the defendant posts a bond, with surety, in a sum determined by such judge to be sufficient to indemnify the adverse party for any damage which may accrue as a result of such stay."); Conn. Gen. Stat. § 52-278n(d) ("A defendant, in lieu of disclosing assets pursuant to subsection (a) of this section, may move the court for substitution . . . of a bond with surety.").  Defendant argues that any bond posted in connection with the prejudgment remedy should also serve as a supersedeas bond for the purposes of its appeal.  Plaintiff opposes this proposition, arguing that the premiums paid on the prejudgment remedy bond should not be treated as taxable costs against him in the event Defendants prevail on appeal. However, to require Defendants to post two bonds, one in connection with the prejudgment remedy and the other in connection with their appeal, would be an inefficient waste of resources.  Thus the Court will treat Defendants' prejudgment remedy bond as a supersedeas bond in order to avoid such inefficiency.

Therefore the Court grants Plaintiff's motion for prejudgment remedy in the amount of $777,131.12 and denies Plaintiff's motion for disclosure of assets.  Defendant is ordered to post a bond in that amount to satisfy the prejudgment remedy and avoid

disclosure of assets, which this Court will also treat as a supersedeas bond for purposes of Defendants' appeal.

**IV.     Conclusion**

Plaintiff's Motion [Doc. # 523] for Assessment of Lost Wages is DENIED, and Defendants' Motion [Doc. # 526] for Oral Argument on that motion is also DENIED. Plaintiff's Motion for Prejudgment Remedy [Doc. # 528] is GRANTED in the amount of $777,131.12.   Plaintiff's Motion [Doc. # 529] for Disclosure of Assets is DENIED. Plaintiff's Motion [Doc. # 519] to Correct is GRANTED.  The Clerk is directed to amend the judgment to reflect an award of prejudgment interest in the amount of $55,592.68, for a total award of $772,949.68.  Defendants are directed to post a supersedeas bond, which will also satisfy their obligation to post a bond in order to stay the effect of the prejudgment remedy, in the amount of $777,131.12.

IT IS SO ORDERED.

_____/s/_____

Janet Bond Arterton, U.S.D.J.

Dated at New Haven, Connecticut this 16th day of December, 2013.